**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **IN THE MATTER OF** | ) | |
| **THE EXTRADITION OF** | ) | **No. 24-mj-01365-DLC** |
| **T.C.** | ) | |

**MOTION FOR RELEASE FROM DETENTION
WITH CONDITIONS PENDING EXTRADITION PROCEEDINGS**

Now comes T.C., a sixteen year-old American citizen with no prior criminal history, who moves this Honorable Court to allow him to be released with conditions pending the extradition proceedings in this case. As reason therefore, the Juvenile states that his detention at Manson Youth Institution in Cheshire Connecticut violates his civil rights and, in combination with other factors, creates  "special circumstances" which overcome the presumption of bail in extradition cases. *See Hu Yau-Leung v. Soscia*, 649 F.2d 914, 920 (2d Cir. 1981).

**I. Relevant Facts**

It's alleged that T.C. was speeding in Istanbul, Turkey, and unable to swerve away from a disabled ATV on the side of the road, accidentally causing the death of one ATV passenger and injuries to others. He is not alleged to have been intoxicated, nor to have shown any disregard for his circumstances. Rather, after the accident he and the others with him remained on site for approximately forty minutes waiting for the ambulance, firetruck and police to arrive. After help arrived, he and the other children with him called their parents as their car was totaled. T.C.'s mother arrived, and

thereafter determined that she and T.C. would leave Turkey for the United States, where T.C. had citizenship, and so purchased airline tickets and otherwise made the arrangements. Throughout, T.C. did as he was told, and neither planned nor made arrangements for the trip.

On June 14, 2024, federal authorities arrested T.C. and his mother in the Boston area pursuant to arrest warrants obtained on May 2, 2024 in the Southern District of Florida. T.C. and his mother appeared before this Court on that afternoon and the Court appointed counsel after advising T.C. and his mother of the nature of the proceedings. The Court set this matter for a further status hearing on June 18, 2024.

After T.C's first appearance on June 14, 2024, he was transported to Manson Youth Institution ("Manson") in Cheshire, Connecticut, described on its own website as, "a level 4 high-security facility. It serves as the Department's primary location for housing sentenced inmates under the age of 21." T.C. was not transported to a Department of Youth Services ("DYS") Facility in Massachusetts because the Massachusetts Federal District Court does not have a contract with a Massachusetts Youth facility. Once T.C. arrived at Manson on Friday, he was kept in isolation without any belongings until Monday, in a room with a light that shone 24 hours a day. His isolation was not due to any perceived rule infraction or mental health issue. Moreover, he has a skin condition that causes his face to become red and chafed, and despite obvious symptoms he was not provided with any relief even after request. His mental health quickly deteriorated under these conditions.

On Sunday, June 16, 2024 undersigned counsel made the seven-hour round-trip car ride to Manson to visit with T.C..  Manson is considered a Department of

Correction facility, and indeed appears to be a prison, its walls made of cinderblock. Unlike Massachusetts DYS facilities where caseworkers and social workers oversee the facility, Manson is run by prison guards in uniforms. In Massachusetts DYS, children wear street clothes and are not considered prisoners; in Manson, the children wore prison garb. This practice, along with the use of prison guards and isolation, was barred fifteen years ago in Massachusetts DYS facilities because of its known psychologically damaging effects on children. T.C., who has not been convicted of any crime and has no prior criminal history, is essentially serving time in Manson.

In December 2021, the United States Department of Justice issued a report addressed to the Governor of Connecticut, the first paragraph of which reads, in relevant part:

> The Civil Rights Division has completed its investigation of conditions for children at Manson Youth Institution. The investigation was conducted pursuant to the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. § 1997 and the Violent Crime Control and Law Enforcement Act of 1994, 34 U.S.C. § 12601…After carefully reviewing the evidence, we conclude that there is reasonable cause to believe that conditions for children at Manson Youth Institution violate the Eighth and Fourteenth Amendments of the United States Constitution and the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1482. These violations are pursuant to a pattern or practice of resistance to the full enjoyment of rights protected by the Constitution and federal law. Specifically, we find that Manson's isolation practices and inadequate mental health services seriously harm children and place them at substantial risk of serious harm…

The report continues (pp. 4-5, 7):

> DOC policy's description of Manson's disciplinary isolation program as "Confined to Quarters" obscures the harsh setting and conditions. Most of the children that we spoke with (as well as some staff) referred to CTQ as "the box." When a child commits a rule infraction that security staff determines warrants assignment to CTQ, he is brought to the isolation unit in handcuffs, strip searched for contraband, given a CTQ jumpsuit to wear, and placed alone in an empty cell without any personal property.

Isolation places children at significant risk of harm. *V.W. v. Conway*, 236 F. Supp. 3d 554, 583 (N.D.N.Y. 2017) (enjoining the disciplinary isolation of children in an adult facility as violative of the Eighth Amendment).[10] Because of their developmental immaturity, brain development, and lack of effective coping mechanisms, children are uniquely vulnerable to the serious and lasting damage isolation causes.[11] In addition to exacerbating existing mental health conditions, isolation can cause a host of other harms to children, including stress-related reactions, sleep disturbances, anxiety, aggression, cognitive dysfunction, self-harming behavior, and suicide.

Children at Manson suffer serious harm as a result of Manson's isolation practices.

## II. Special Circumstances Warrant Release on Bail

While "there is a presumption against bail in extradition cases," "special circumstances" "in which 'the justification [for release] is pressing as well as plain'" can readily overcome that presumption. *United States v. Kin-Hong*, 83 F.3d 523, 524 (1st Cir. 1996) (internal citations and quotation omitted). Indeed, "it is not an insurmountable presumption and bail can be granted in extradition cases when warranted" *Matter of Extradition of Pappas*, No. 23 CR 515, 2023 WL 7220053, at *4 (N.D. Ill. Nov. 2, 2023) Where a defendant's "unique characteristics" and "liberty interest" warrant release "the courts should consider those circumstances as 'special circumstances'". *Id.*

"The list of potential 'special circumstances' is not limited to those previously recognized in published decisions," and "the determination of what constitutes a 'special circumstance,' is left to the sound discretion of the trial judge." *In re Extradition of Gonzalez*, 52 F.Supp.2d 725, 736 (W.D.La.1999) (citing *Beaulieu v. Hartigan*, 554 F.2d 1, 1 (1st Cir. 1977)); *see also* (*Matter of Extradition of Pappas*, 2023 WL 7220053, at *4) ("judges have significant discretion in deciding what constitutes a special circumstance, in line with the above principles, given the lack of binding case law, lack of definition of

the term special circumstances, and conflicting decisions among district courts across the country."). *See In re Gannon,* 27 F.2d 362 (E.D.Pa.1928) (the court found special circumstances when the defendant was a good bail risk and the extradition hearing could not take place for at least two months.).

      Amongst the most compelling "special circumstances" warranting release is the juvenile status of the detainee and lack of suitable detention facilities. *See Hu Yau-Leung v. Soscia*, 649 F.2d 914, 920 (2d Cir. 1981) (special circumstances existed for 16-year-old British subject to extradition proceedings); *see also Matter of Extradition of Sidali*, 868 F. Supp. 656, 658 (D.N.J. 1994) ("this single factor may in the appropriate case amount to 'special circumstance'").

      Here, the defendant is a sixteen-year-old citizen of both the United States and Turkey, who is being confined at the Manson Youth Institution, which has recently been found to have violated the civil rights of the children it is mandated to protect. *See* Ex 1, 2 and 3. Specifically the Department of Justice, *inter alia*, found that:

- Manson's isolation practices do not serve a legitimate government purpose and show a deliberate indifference to the growing body of evidence that isolation is particularly harmful to children. Exhibit 1 at 12;

- Manson fails to provide children with adequate mental health supports and services. Exhibit 1 at 12;

- Manson's mental health staff regularly fail to consider relevant information available --through records, screening tools, and interviews -- when assessing a child's mental health needs. Exhibit 1 at 13;

- Mental health assessments conducted at Manson repeatedly miss or minimize the significance of a history of exposure to severely traumatic events, as well as the resultant mental health difficulties and impact on the child's ability to function. Exhibit 1 at 14;

Indeed, the lack of access to adequate mental health support and services, Manson's isolation practice, as well as T.C.'s age put him at risk of a serious deterioration in his health. *Kin-Hong*, 83 F.3d at 524; *see also Hilton v. Kerry*, 754 F.3d 79, 82 (1st Cir. 2014) (defendant's worsening mental health was a "special circumstance" "overriding the presumption against granting bail in extradition proceedings."). There is significant research showing that incarceration "damages young people's health and harms their future progress in education and employment, and it does all this at enormous expense while offering no benefit for young people or their communities."

For these reasons, 18 U.S.C § 5035 prioritizes detention "in or near [a juvenile's] home community." The Justice Manual §9-8.010 similarly states: "In addition, the law requires that every juvenile in custody be provided with adequate food, heat, light, sanitary facilities, bedding, clothing, recreation, education and medical care, including necessary psychiatric, psychological, or other care and treatment.When a juvenile is arrested or the United States will seek pretrial detention, the local U.S. Marshal is responsible for determining the availability of local juvenile bed space."

T.C.'s incarceration at Manson Youth Institution, however, places him a three-and-a-half-hour drive away from his only family in the United States, who are in Amesbury, MA. In short, T.C.'s continued detention at Manson Youth Institution will put his mental health at risk and unnecessarily remove him from his family, including his only relatives in the United States. It also isolates him from his legal counsel, and interferes with his right to counsel and therefore to present a defense.

The detention of a sixteen-year-old child in Manson, a detention facility known for violating the civil rights of children and which has already violated T.C's civil rights

in the few days he has been held, and which is outside of the Federal Court District such that visits from family and legal counsel are almost prohibitive, should under all circumstances qualify as "special circumstances". While it is unclear why the District Court of Massachusetts chose to contract with the "unsuitable" Manson Youth Institution rather than one of its own facilities nearer the home community of the juveniles it serves, the effect is that it creates special circumstances which overcome the presumption of bail in this extradition case. *See Hu Yau-Leung v. Soscia*, 649 F.2d 914, 920 (2d Cir. 1981).

## III. Conclusion

For all the reasons stated herein, the juvenile T.C. requests that he be released to the care of his family who has lifelong residence in the Boston area with whatever conditions the Court deems appropriate, including house arrest, loss of passport, education, and mental health counseling.

Respectfully Submitted,

T.C.
By his attorney,

/s/ Victoria Kelleher

Victoria Kelleher
Kelleher & Maceo, P.C.
BBO #637908
53 State Street
Suite 500
Boston MA 02109
978-744-4126

CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was served on all counsel of record this day, June 18, 2024, and with the United States District Court, District of Massachusetts, 1 Courthouse Way, Boston, 02210.

/s/ Victoria Kelleher

Victoria Kelleher