## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF ) | |
| THE EXTRADITION OF ) | No. 24-mj-01365-DLC |
| T.C. ) | |

### THIRD AFFIDAVIT IN SUPPORT OF MOTION FOR RELEASE FROM DETENTION WITH CONDITIONS PENDING EXTRADITION PROCEEDINGS

I, Victoria Kelleher, do hereby state the following is true based on my knowledge and belief:

1. I am counsel for the juvenile T.C.

2. On June 25, 2024, I discovered additional significant violations of T.C's civil rights that constitute "special circumstances" faced by T.C. as a result of his continued detention at Manson Youth Institute ("Manson").

3. Specifically, I discovered that the reason that Manson appears more like a Massachusetts adult prison than it does a Massachusetts Department of Youth Services ("DYS") facility is that Manson is not a Juvenile Detention Center, but rather an adult corrections facility run by the Connecticut Department of Correction. In Massachusetts, pretrial youthful offenders remain in Massachusetts DYS custody.

4. Under Connecticut law, Juvenile Detention Centers are operated by the Judicial Department. These detention centers are located in Hartford, New Haven and Bridgeport, and overseen by Probation. Manson is not a Juvenile Detention Center.

5. Under Connecticut law, those male youths charged and/or adjudicated as youthful offenders are detained and sentenced to Manson, which is considered an adult prison. As Connecticut DOC itself has said, "…while MYI does house juveniles, it is an adult correctional facility, and the practices and standards that govern juvenile facilities, by definition, do not apply to it."[1] *See* Exhibit A (photograph of a cell in Manson, as published by Connecticut Public Radio, https://www.ctpublic.org/news/2022-02-01/manson-under-the-microscope-as-connecticut-contemplates-the-future-of-youth-incarceration.)

6. Manson houses both those charged as youthful offenders and those convicted as youthful offenders within the same housing units. They are not separated from each other.

7. In order to qualify for imprisonment at Manson, a child must be either convicted or detained as a youthful offender. (CGS § 18-73). In order to be detained pretrial at Manson as a youthful offender, the child must be either statutorily eligible or a court

---

[1] https://ctmirror.org/2020/11/17/ct-child-advocate-report-adult-prison-system-is-no-place-for-minors/

    must determine that the child meets the criteria after a hearing. T.C. is neither statutorily eligible nor has any court determined he meets the criteria as a youthful offender.[2] See Exhibit B (Letter from Conn.'s Office of Legislative Research which lays out the Youthful Offender qualifiers.)

8. Based on the foregoing, Manson lacks statutory authority to hold a child such as T.C. in its youthful offender adult prison.

9. T.C. has conveyed some of the conditions he witnessed at Manson, which continue to violate the civil rights of juveniles as laid out in the U.S. DOJ report. Specifically, he has witnessed three fights in his unit since his arrival. On each occasion, the children are immediately pepper-sprayed and then placed in "the box", an isolation cell, where they remain for three days as punishment. He is housed with violent offenders.

10. I contacted Attorney Renee Cimino, Director, Delinquency Defense and Child Protection, Hartford Conn.; Attorney James Connolly, Supervisor, Juvenile Post-Conviction and Reentry Unit, Office of the Chief Public Defender, Hartford Conn., and Attorney Sarah Eagan, Connecticut's Office of the Child Advocate ("OCA"), who oversees the OCA's investigation, public reporting and advocacy work addressing issues across child-serving systems. Attorney Eagan's state review of Manson is what triggered the Federal investigation, and she continues to be involved in Manson's oversight in her role at Connecticut's Office of the Child Advocate ("OCA").

11. Attorneys Cimino, Connolly, and Eagan confirm that Manson is a maximum security adult prison run by the Department of Correction. Connecticut is an outlier in this regard, and one of the only states that incarcerates youthful offenders in an adult prison. Manson continues to use isolation as punishment and regularly uses chemical sprays on children. They have little in the way of mental health services and maintain a highly restrictive environment.

---

[2] Youth who have not committed one of the enumerated offenses for classification as a youthful offender are ineligible for detention at Manson unless and until a court determines the following: the crime was committed after the child attained age 15; there is probable cause to believe the child committed the crime charged; it's in the best interests of the child and public. (CGS § 46b-127.) In considering the latter, the court must consider whether the child has committed prior offenses, the seriousness of the offenses, and the availability of services in the juvenile detention center that might best meet the child's needs. Id.  Here, T.C.'s alleged crime under Connecticut law, criminal misconduct with a motor vehicle resulting in death, (CGS § 53a-57), would be a class D felony, and thus not within automatic transfer portion of the youthful offender statute. See also, CGS § 14-224, evasion of responsibility in operation of motor vehicles resulting in death, which is specifically disqualified for automatic transfer. As for a discretionary transfer pursuant to CGS § 46b-127, one might argue T.C. meets the criteria based on the seriousness of the offense; however, T.C. has no prior history of offending and no court has determined that he would not benefit from from services in a juvenile detention facility — both also necessary prongs. He therefore also does not qualify for Manson pursuant to Connecticut law, either by their automatic or discretionary definition of a youthful offender.

12. I have reviewed the government's most recent filing in this case, (doc #39.) While the State of Connecticut has removed T.C.'s identifying information from its active prisoner locator website, the Government offers no explanation for Manson's release to the press of T.C.'s prison booking photo, in which T.C. is wearing prison garb, and the screenshot of his identifying information as contained in Manson's confidential records system. Moreover, Manson's agreement to provide T.C. with his medication, as conveyed to defense counsel late Friday afternoon, is contingent on defense counsel's ability to provide a prescription. Without a medical release from T.C., defense counsel is unable to do so, and the family is attempting to contact the provider. Such a contingency has made a prompt response by T.C., his guardians, and defense counsel impossible. Finally, although Manson yesterday agreed to add T.C.'s father's number to his calling list, T.C.'s attempt to reach his father was unsuccessful because Manson had not properly added the number. As I was told that Manson regularly accommodates overseas calls to Puerto Rico, I am at a loss as to why an overseas call by a child to his father anywhere would require a ten day delay.

13. Based on the continued violations of T.C.'s civil rights, his right to confidentiality, and the lack of statutory authority for T.C. to be held in an adult prison with pretrial and convicted youthful offenders, Manson continues to prove it is an inadequate and unsuitable place to detain T.C., who is not a youthful offender and should not be held in a Department of Correction adult prison.

Signed under the pains and penalties of perjury

/s/ Victoria Kelleher

Victoria Kelleher
Kelleher & Maceo, P.C.
BBO #637908
53 State Street
Suite 500
Boston MA 02109
978-744-4126

CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was served on all counsel of record this day, June 26, 2024, and with the United States District Court, District of Massachusetts, 1 Courthouse Way, Boston, 02210.

/s/ Victoria Kelleher

Victoria Kelleher