**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **IN THE MATTER OF** | ) | |
| **THE EXTRADITION OF** | ) | **No. 24-mj-01365-DLC** |
| **T.C.** | ) | |

**REPLY TO GOVERNMENT'S RESPONSE RE: PAPER #52**
**REGARDING THE RELEASE TO THE PRESS OF BPD'S BODY CAMERA VIDEO**
**CONCERNING THE ARREST AND BODY SEARCH OF A 15 YEAR OLD CHILD**

Now comes counsel for the child, T.C., who replies to the government's "Response as to In the Matter of the Extradition of T.C.: [50] Affidavit in Support of Motion filed by In the Matter of the Extradition of T.C." as follows:

1. I am counsel for the juvenile T.C.

2. On or about June 27, 2024, the Boston Police Department (BPD) released body camera footage of T.C.'s arrest and body pat search, including footage of an officer running his hands over T.C.'s legs, buttocks, and groin area (over his pants). This footage was released pursuant to a Freedom of Information Request made by the Turkish Press.

3. The government responds that the release of such information was required under the Public Records law, M.G.L. c. 66 § 10a, and that T.C., who was arrested pursuant to an extradition warrant, is not protected by either the state or federal statutory exemption for investigative and court records relating to juvenile delinquency. *See e.g.,* Juvenile Court Standing Order 1-84; *Police Commissioner of Boston v. Municipal Court of the Dorchester District & another*, 374 Mass. 640 (1978)(legislature intended for juveniles to have broad privacy rights); 18 U.S.C. § 5038.

4. The juvenile, T.C. replies that exemptions to the Public Records law are found at M.G.L. c. 66 § 10(a) and M.G.L. c. 4 § 7(26), and also include at M.G.L. c. 4 § 7(26)(c) personnel and medical files or information *and any other materials or data relating to a specifically named individual, the disclosure of which may constitute an unwarranted invasion of personal privacy* (emphasis added.)

5. Here, the exemption at M.G.L. c. 4 § 7(26)(c) applies where the release of the video of the pat search of T.C's body, including his buttocks and groin area, constitutes an unwarranted invasion of his personal privacy, particularly where he is a juvenile. Also applicable, the Turkish press sought the video relative to T.C., a specifically named individual. The blurring of T.C's face using a digital redaction tool is itself imperfect based on the movement of the body worn camera, and nevertheless does not cure this serious privacy violation where the circumstances make plain T.C.'s identity.

6. In deciding whether privacy interests should outweigh the need for public disclosure under M.G.L. c. 4 § 7(26)(c), Massachusetts courts have "looked to three factors … : (1) whether disclosure would result in personal embarrassment to an individual of normal sensibilities; (2) whether the materials sought contain intimate details of a highly personal nature; and (3) whether the same information is available from other sources" (footnote omitted). *People for the Ethical Treatment of Animals (PETA) v. Dep't of Agric. Res.,* 477 Mass 280, 292 (2017)." '[O]ther case-specific relevant factors' may [also] influence the calculus." *PETA, supra,* quoting *Police Comm'r of Boston, supra.*; M.G.L. c. 4 § 7(26)(c).

7. Here, disclosure to the press of video footage of the police searching the buttocks and groin area of a 15 year old boy most certainly would result in personal embarrassment to a person of normal sensibilities, and the video itself contains details of a highly personal nature. *Id.*

8. As with all violations of T.C.'s privacy — including not just the highly personal video footage at issue but also the release by Manson Youth Institute ("Manson") of such confidential records as T.C's  prison booking photo and screenshots of his personally identifying information, as contained on both Manson's confidential intake screen and the Department of Correction website — the government has sought to normalize the violations in this case, whereby government officials tasked with caring for a juvenile have instead divulged his personal and confidential information to the Turkish government-owned press, which has in turn plastered his personal information on every news source.

9. Even if it cannot be said that the BPD acted in bad faith in releasing the highly personal video footage, the same cannot be said for Manson, which released T.C.'s private information to the Turkish press without any authority or cause, raising the specter of personal gain.

10. Finally, the government argues that the laws designed to protect juveniles in delinquency proceedings don't apply to T.C. because he is not being prosecuted as a delinquent. Should the Court find that state and federal laws pertaining to delinquency proceedings do not pertain to T.C., it would stand to reason that the U.S. Marshals lack authority to provide for T.C.'s custody, handling, and detention pursuant to Federal Juvenile Justice and Delinquency Prevention Act, 18 U.S.C. 5031 – 5043 ("the Act".) As such, any contract between the U.S. Marshals and Manson for the detention of juveniles pursuant to the Act should not and cannot apply to T.C., and his continued detention in their facility is without authority.

11. For all the reasons stated herein, T.C. ought to be released from detention due to the special circumstances in this case, whereby the government has demonstrated its inability to provide him with suitable detention and to protect his civil and privacy rights.

Respectfully submitted,
Victoria Kelleher
Counsel for T.C.

/s/ Victoria Kelleher

Victoria Kelleher
Kelleher & Maceo, P.C.
BBO #637908
53 State Street
Suite 500
Boston MA 02109
978-744-4126

CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was served on all counsel of record this day, July 1, 2024, and with the United States District Court, District of Massachusetts, 1 Courthouse Way, Boston, 02210.

/s/ Victoria Kelleher

Victoria Kelleher