IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| THE EXTRADITION OF | ) | No. 24-mj-01365-DLC |
| T.C. | ) | |

**GOVERNMENT'S RESPONSE TO EMERGENCY MOTION TO TRANSFER T.C. TO THE MASSACHUSETTS DEPARTMENT OF YOUTH SERVICES OR IN THE ALTERNATIVE TO RECONSIDER ORDER DENYING RELEASE**

The United States of America hereby responds to the emergency motion of T.C. to transfer to the Massachusetts Department of Youth Services ("MA DYS") or, in the alternative, to reconsider order denying release, Dkt. 65. The government takes no position on T.C.'s motion to the extent he requests to transfer to MA DYS, but opposes T.C.'s motion to the extent it seeks reconsideration of the order denying release.

The government defers to the Court and the United States Marshals Service in determining where to detain T.C. pending his extradition hearing.[1] 18 U.S.C. § 3184 (court "shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made"). *But see* 18 U.S.C. § 4086 ("United States marshals shall provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution.").

A transfer to MA DYS obviates the need for the Court to reconsider its detention order,

---

[1] The government notes that Article 19 of the Treaty on Extradition and Mutual Assistance in Criminal Matters Between the United States of America and the Republic of Turkey, U.S.-Turk., June 7, 1979, 32 U.S.T. 3111 ("Treaty"), provides that, "Expenses in the territory of the Requested Party for processing the extradition request for the person sought shall be borne by that Party until surrender. The expenses after surrender shall be borne by the Requesting Party." Because the Treaty postdates the passage of 18 U.S.C. § 3195, which was enacted in 1948, the Treaty controls. *E.g.*, *Whitney v. Robertson*, 124 U.S. 190, 194 (1888); *Weinstein v. Islamic Republic of Iran*, 624 F. Supp.2d 272, 275 (E.D.N.Y. 2009).

but even if the Court were to entertain T.C.'s arguments for reconsideration, they are meritless. "The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" *Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*, 392 F. Supp. 3d 138, 140 (D. Mass. 2019) (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006)). "'Motions for reconsideration are appropriate only in limited circumstances: (1) if the moving party presents newly discovered evidence, (2) if there has been an intervening change in the law, or (3) if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust.'" *Id.* (quoting *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009)). "These exceptions are 'narrowly configured and seldom invoked.'" *Id.* (quoting I, 6 F.3d 27, 31 (1st Cir. 1993)).

Here, T.C. does not appear to argue that there was a change in the law or that the Court's detention order was based on a manifest error of law or clearly unjust. Rather, he appears to be arguing that his move from the Manson Youth Institution in Cheshire, Connecticut to the Northeast Juvenile Detention Center in Newark, New Jersey creates a new special circumstance, akin to newly discovered evidence. In support, T.C. cites a limited isolation as part of the facility's Covid prevention protocol and having to make new relationships with staff—both of which are temporary and similar to factors the Court already considered in its detention order. *See* Dkt. 59 at 19 (finding that T.C.'s initial isolation upon arriving at Manson and other temporary adjustments "are not sufficiently grave and atypical as to warrant bail"). The Court also previously considered Manson's distance from T.C.'s attorneys and family and found that they did not amount to special circumstances. *Id.* at 25-26. The additional two-hour driving distance from Manson to Newark does not prevent T.C. from seeing his attorneys or his family; indeed, his attorney had already visited him within days of his arrival in Newark. Further, where

his extradition hearing is three months away, there is ample time for T.C. to consult with his attorneys.  In any event, neither the need to consult with counsel nor the distance from family is a special circumstance warranting release from detention.  *See id.* at 25-26 (citing cases concerning meeting with counsel); *In re Extradition of Schumann*, 2018 WL 4777562, at *6 (N.D. Ill. Oct. 3, 2018) ("The inability to have any contact or to provide support for family members are typical circumstances whenever one is taken into custody and cannot be considered 'special circumstances.'").

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:   */s/ Kristen A. Kearney*
KRISTEN A. KEARNEY
Assistant U.S. Attorney

Date:  July 16, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Kristen A. Kearney*
KRISTEN A. KEARNEY
Assistant U.S. Attorney

3