UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN THE MATTER OF THE EXTRADITION
OF T.C

Docket No. 24-mj-01365-DLC

(**REDACTED COPY**)
Leave to File Pending

### APPEAL FROM MAGISTRATE JUDGE'S ORDER DENYING A REQUESTED TRANSFER TO A MASSACHUSETTS DYS FACILITY (DKT. 71) OR, IN THE ALTERNATIVE, THE DETENTION ORDER (DKT. 59)

T.C. is a seventeen-year-old natural-born U.S. citizen with no prior criminal history who is detained in federal custody pending an extradition hearing in the District of Massachusetts, and jailed at the Essex Juvenile Detention Center ("Essex") in Newark, NJ pursuant to contracts with and placement decisions made by the United States Marshal for the District of Massachusetts.[1] Pursuant to *Wright v. Henkel,* 190 U.S. 40 (1903),[2] undersigned counsel respectfully appeals the Magistrate Judge's July 26, 2024 Order, Dkt. 71, denying T.C.'s request to transfer him to a Massachusetts Department of Youth Services ("Mass DYS") facility and the Marshal's decision to house T.C. in New Jersey, at least a five-hour drive away from his attorneys and his Massachusetts based family, where he is ███████████████████████████████████████

███████████████████████████████████████████████████

---

[1] T.C. was just sixteen years old when he was first arrested and detained.

[2] *Wright* was persuasively interpreted by the Ninth Circuit to incorporate an Article III judge's right to review a Magistrate Judge's bail decision in connection with an extradition proceeding. *See United States v. Al-Nouri*, 983 F.3d 1096, 1098 (9th Cir. 2020) and *Matter of Requested Extradition of Kirby*, 106 F.3d 855, 859 (9th Cir. 1996), *as amended* (Feb. 27, 1997); *but see In re Extradition of Ghandtchi,* 697 F.2d 1037, 1038 n.2 (11th Cir. 1983) (finding no jurisdiction).

[3] *See*, Juvenile Justice and Delinquency Prevention Act of 1974 ("JJDPA") and the Prison Rape Elimination Act of 2003 ("PREA"), 42 U.S.C. § 5633 (a)(12), which requires that juvenile detainees be housed separately from adults.



████████████████████████████████████████████████████████

████████████████████████████████████████████████████████.[4] Even today,

████████████████████████████████████████████████████████

████████████████████████.[5] As noted by Dr. Elliot L Atkins in his report,[6] ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████. Exhibit 1.

18 U.S.C. 3184 authorizes the Court to "issue[]" the "warrant for the commitment of the person" subject to extradition "to the ***proper jail***, there to remain until such surrender shall be made." (emphasis added). Based on Attorney Kelleher's experience, who has represented juveniles held in custody in the past, Mass DYS has the appropriate staffing, staff training, facilities, and programming to creates a safe and secure environment for the children in their custody, and is the "proper jail" under the circumstances of this case. Indeed, had T.C. been charged and detained in the United States, he would have been placed "in a foster home or community based facility located in or near his home community…" away from "adult persons convicted of a crime or awaiting trial on criminal charges…" and "adjudicated delinquents…", *i.e.*, a facility like Mass DYS. 18 U.S.C.

---

[4] *See*, PREA standards at 28 C.F.R. 115.342(b) "Residents may be isolated from others only as a last resort when less restrictive measures are inadequate to keep them and other residents safe, and then only until an alternative means of keeping all residents safe can be arranged. During any period of isolation, agencies shall not deny residents daily large-muscle exercise and any legally required educational programming or special education services. Residents in isolation shall receive daily visits from a medical or mental health care clinician. Residents shall also have access to other programs and work opportunities to the extent possible."

[5] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████.

[6] Dr. Elliot Atkins, a retained child psychologist and therapist in Evesham, NJ, ████████████
████████████████████████████████

§ 5035. The Marshal's decision to house T.C. at facilities paradigmatically ill-suited to detain a presumed innocent juvenile, which, as proven, ███████████████████████ ██████████, justifies a judicial order placing T.C. into Mass DYS custody.

Alternatively, T.C. should be granted bail because numerous special circumstances— including T.C.'s age and lack of a suitable facility, as well as the Turkish government's failure to have him indicted or charged as required for extradition under Article 1 and 7 of the Extradition and Mutual Assistance in Criminal Matters between the United States of American and the Republic of Turkey (hereinafter "Treaty") — justify the release of T.C., who is not a flight risk or a danger, until a final judgment is made on extradition. T.C. was detained pursuant to the Magistrate Judge's July 9, 2024 Detention Order, Dkt. 59.

## I.   FACTUAL BACKGROUND

On May 3, 2024, the United States sought an arrest warrant for T.C. in the United States District Court for the Southern District of Florida based on a request from the Turkish government. Dkt. 5. The extradition complaint alleges that T.C. was speeding in Istanbul, Turkey, and unable to swerve away from a disabled ATV on the side of the road when he accidentally caused the death of one ATV passenger and injuries to others. T.C. was not alleged to have been intoxicated, nor to have shown any disregard for his circumstances. *Id.* Rather, after the accident he and the others with him remained on site for approximately forty minutes waiting for the ambulance, firetruck and police to arrive. After help arrived, T.C.'s mother picked up T.C. and certain of his friends, and thereafter determined that she and T.C. would leave Turkey for the United States, where T.C. had citizenship. T.C.'s mother purchased airline tickets and otherwise made travel arrangements. Throughout, T.C. obeyed his mother, and neither planned nor requested to be removed from Turkey.

T.C.'s mother took T.C. to the United States rather than remain in Egypt, the first leg of their trip from which extradition would have been unlikely or impossible, *see* Dkt. 92 at 2. T.C. has close family ties in Massachusetts; his aunt, uncle, and cousin are long-term residents. Dkt. 86 at 2-3. When T.C. was younger, they visited him in Turkey and T.C. visited them in the United States. *Id.* After T.C.'s mother brought him to Massachusetts, they first settled in an AirBnB on Plum Island and then subsequently signed a one-year lease in Haverhill. Dkt. 92 at 2. During this time, T.C. saw his aunt and uncle on multiple occasions. *Id.* T.C.'s aunt assisted him with his medical care, including receiving treatment for his skin condition and his dental care. Dkt. 86 at 2-3. T.C.'s mother even enrolled him in Haverhill Public Schools and, at the time of the arrest, was exploring private school options in the area so that T.C. could be close to his U.S.-based family. Dkt. 92 at 2. Following T.C.'s arrest, his aunt and uncle made the long drives to visit T.C. in Connecticut and then New Jersey. *Id.* The significant physical distance between them, the limited visiting hours,[7] and the limited ability to make phone calls,[8] have made regular contact impossible.

T.C. was arrested while visiting schools in the District of Massachusetts on June 14, 2024. That same day, the government filed its request for Detention Pending Extradition Proceedings. Dkt. 7.

After T.C's first appearance, he was transported to Manson Youth Institution in Cheshire,

---

[7] ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████
█████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████

Connecticut, described on its own website as, "a level 4 high-security facility. It serves as the Department's primary location for housing sentenced inmates under the age of 21." *See https://portal.ct.gov/doc/facility/manson-yi.* The Marshals' did not transport T.C. to Mass DYS solely because of financial reasons. *See* Dkt. 86. Indeed, the government relied on the cost-saving figures presented by the United States Marshal for the District of Massachusetts in its own filing[9] to justify the detention of T.C. outside of Massachusetts despite recently contracting with Mass DYS,[10] and Mass DYS's representations that they remain willing and able to house T.C.[11] Dkt. 65.

Once T.C. arrived at Manson on June 14, 2024, he was kept in isolation without any belongings for three days in a room that was lit 24 hours a day. Dkt. 22. His isolation was not due to any perceived rule infraction or mental health issue. *Id.* Moreover, T.C. was not provided the opportunity during this time to call his father in Turkey and was housed with convicted offenders. Dkt. 29; Dkt. 40.

Counsel for T.C. additionally determined that:

a. Manson unlawfully disclosed to journalists, in violation of T.C.'s privacy rights, a booking photo taken by Manson correction staff of T.C. in his prison garb, along with a screenshot of the computer entry showing the time of booking and personally identifying information, Dkt. 29;

b. T.C., according to his reports, had been questioned by a Manson corrections officer about the facts relating to the crime that he allegedly committed and asked whether he actually committed the crime. Such interrogation of a represented juvenile outside of the presence of his lawyer, and without the consent of his parent or guardian, is a violation of T.C.'s constitutional right to due process, right to counsel, and right against self-incrimination, *id.*; and

c. Boston Police Department, presumably by agreement with United States

---

[9] The U.S. Marshals contend that Mass DYS is three times more expensive than both Manson and New Jersey. *See* Dkt. 81.

[10] Based on counsel Kelleher's knowledge and belief, the U.S. Marshals contracted with Mass. DYS approximately two years ago to house juveniles in the custody of the Massachusetts U.S. Marshals.

[11] These representations were made by Commissioner Reardon of the Mass DYS to Attorney Kelleher, who relayed the information to the court.

Marshals, released Boston Police Department body camera footage of T.C.'s arrest and body pat search pursuant a Freedom of Information Act ("FOIA") request by the Turkish press – which is predominantly controlled by the Turkish government. The released footage has an electronic block over T.C.'s face, however, his identity is still plain based on the circumstances, the audio, and the portions of his head and body that remain visible throughout the video in violation of T.C.'s privacy as a juvenile. Dkt. 50.

On June 18, 2024, T.C. filed his request for release from custody arguing *inter alia* that T.C.'s age, the unconstitutional conditions at Manson, and the ongoing violations of his constitutional and privacy rights constituted "special circumstances" warranting his release on bond and offering to post, through his father: (1) a $200,000 USD cash bond to be deposited with the court, which will come from T.C.'s father's borrowing funds from family and friends or (2) a $2 million bond executed by the father and secured by the father's home in Turkey, which is free and clear of encumbrances. On top of these financial conditions, T.C. agreed to stay with his relatives in Massachusetts under their supervision and care and to be subject to strict conditions including a curfew or even house arrest,[12] surrender of any travel documents, and any other condition that Magistrate Judge Cabell believed would, in the aggregate, assure his appearance. Dkt. 22, 26, 28, 29, 40, 41, 50, 53, 86.

Magistrate Judge Cabell denied T.C.'s request for bail on July 9, 2024, *see* Dkt. 59. In his bail decision, Magistrate Judge Cabell considered T.C.'s conditions of confinement, as articulated by affidavits submitted by counsel, *see* Dkt. 22, 26, 28, 29, 40, 41, 50, 53, 86, but rejected defense counsel's concerns, finding none to constitute "special circumstances", and finding that although Manson had some concerning attributes similar to an adult prison, the "more concerning aspects of T.C.'s detention at Manson have had to do with short-lived restrictions related to his

---

[12] T.C.'s aunt offered to be a responsible third-party trustee/de facto guardian ad litem to monitor T.C. and report any conduct that would not conform with any conditions of release. Dkt. 86.

orientation." Dkt. 59 at 27. Additionally, while Magistrate Judge Cabell found T.C. to be a flight risk, in part based on his assessment that "T.C. actively took part in fleeing the scene of the accident and thereafter the country", he nonetheless assumed "without deciding the issue that it would be possible to fashion a set of conditions to adequately mitigate the risk of flight." *Id.* at 18 (internal citation and quotations omitted).

On July 12, 2024, shortly after Magistrate Judge Cabell's order, the Marshals moved T.C. to the Essex County Juvenile Detention Center in Newark, NJ solely because of his valid and truthful complaints regarding the conditions at Manson, which counsel had presented to the Court. *See* Dkt. 74. The Marshals chose Essex despite knowledge that Mass DYS was willing and able to take T.C. into their custody. Dkt. 65.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████ T.C. requested Magistrate Judge Cabell to order the Marshals to transfer him to a Mass DYS facility, *see* Dkt. 65, a motion which was denied on July 16, 2024, Dkt. 71. Instead, Magistrate Judge Cabell offered, in his discretion, to ask the Marshals to transfer T.C. back to Manson if T.C. so requested. Dkt. 71. The following day, T.C. made a request to Magistrate Judge Cabell to be transferred back to Manson. Dkt. 72. Manson, however, refused to take T.C. because of the allegations against Manson in counsel's filings. Dkt. 74.

Just days after his transfer to Essex, on July 17, 2024, T.C. was brutally assaulted. *See* Dkt. 74. ██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████ Dkt. 96 (filed partially under seal).

████████████████████████████████████████████████████████████

████████████████████████████████████ . *Id.* ████████████

██████████████████████████████████████, [13] ████████

████████████████████████████████████████████ . ████████

████████████████████████████████████████████████████████████

██████████████████████████████

      ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

Exhibit 1. ██████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████ *Id.* T.C. ██████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ Exhibit 1.

      Finally, ████████████████████████████████████████

---

[13] ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

███████████████████████████████████████████████.[14] ██████████████████████

████████████████████████████████████████████████████████████████

████████████████ *Id.* A further request to reconsider was made on July 19, 2024, Dkt. 74, and a request to expedite an order on this request was made on August 5, 2024, Dkt. 96 Despite an August 9, 2024, order from Magistrate Judge Cabell that the Court "will issue a ruling on the pending motion to reconsider in the near future," Dkt. 98, no decision has been made.

T.C. has now been incarcerated for more than two months, and the litigation over his extradition is unlikely to be resolved for many months, if not years. Indeed, the defense challenges extradition based on the incomplete and incompetent information provided by the Turkish government, which if properly disclosed would likely have caused the United States government not to seek the arrest and extradition of a minor U.S. citizen to a foreign country known for its civil rights abuses of juveniles in particular and their conditions of confinement. During this period, the law requires that T.C. be held at a suitable facility, in this case Mass DYS, and not be detained in ██████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████. Alternatively, he should be released on bail because he does not pose a serious risk of flight and the "special circumstances" of this case warrant it.

## II.   THIS HONORABLE COURT SHOULD ORDER T.C.'S TRANSFER TO MASS DYS.

While extradition may be different from criminal and civil proceedings, a juvenile does not

---

[14] ██████████████████████████████████████████████
████████████████████████████████████████████
██████████████

lose his Fifth, Sixth, and Eighth Amendment rights to counsel, personal safety, and medical services. Appropriately, when arrest and detention are sought pursuant to extradition requests, 18 U.S.C §3184 governs and, in relevant part, provides that the court "***shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made***. 18 U.S.C §3184 (emphasis added). Whereas the United States Marshals are charged with the temporary safe-keeping of "federal offenders" and those "pending commitment to an institution" pursuant to 18 U.S. Code § 4086 (itself titled "Temporary safe-keeping of federal offenders by marshals," and headed with: "United States marshals shall provide for the safe-keeping of any person arrested, or held under authority of any enactment of Congress pending commitment to an institution," ) that statute has no application in extradition cases. *See*, *e.g.*, *Dubin v. United States*, 599 U.S. 110, 120-21 (2023) (reaffirming that "the title of a statute and the heading of a section" are useful tools in statutory construction). T.C. is neither a federal offender nor is he being detained pending commitment to an institution, but rather he is being detained solely pursuant to an extradition request from Turkey.

As detailed above, the Marshal's decision to send T.C. to Essex, a facility in New Jersey, and Magistrate Judge Cabell's decision not to exercise his rights under §3184 to order the transfer of T.C. to the requested Mass DYS facility was and continues to be an improper delegation of the Court's powers to the Marshals, and is inconsistent with §3184 requirement that the court order placement to a "proper facility." As the defense has already articulated in its multiple submissions, no presumed innocent juvenile should be housed in a facility that is ████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████, *see* Exhibit 1, and is simply unnecessary given that Mass DYS is willing and able to house T.C. – a fact confirmed by T.C.'s co-counsel Victoria Kelleher and communicated to the Marshals on numerous occasions.

The defense respectfully believes that this Honorable Court can and should review Magistrate Judge Cabell's decision not to invoke the courts' rights and obligations under §3184 to place T.C. in Mass DYS, which T.C.'s counsel contends is the "proper jail" under the present circumstances. *See United States v. Al-Nouri*, 983 F.3d 1096, 1098 (9th Cir. 2020) (finding Article III judge's right to review Magistrate Judge's decision under *Wright* and §3184 – "To the extent a magistrate judge has been assigned the Article III power to make bail decisions, either implicitly by custom or expressly by local rules, such decisions may be reviewed de novo by the district court upon application by a party."); *see also Matter of Requested Extradition of Kirby*, 106 F.3d 855, 859 (9th Cir. 1996), *as amended* (Feb. 27, 1997) (finding "that a judge's decision to grant or deny bail in an extradition case is a decision 'of the district court' within the meaning of section 1291"); *United States v. Messina*, 566 F. Supp. 740 (E.D.N.Y. 1983) (government appealed to the district court from Magistrate's Order admitting to bail arrestees in custody pending formal request for their extradition by the government of Italy); *Matter of Extradition of Hamilton-Byrne*, 831 F. Supp. 287, 288 (S.D.N.Y. 1993).[15] Should the Court find that T.C. has no right of direct appeal of

---

[15]   The First Circuit does not recognize a right of appeal of detention orders in extradition cases, *see Koskotas v. Roche*, 931 F.2d 169, 171 (1st Cir. 1991), requiring instead the filing of a habeas corpus petition which T.C. contends is the correct procedure to challenge decisions on extradition itself but that an Appeal of a decision not to order the transfer of a prisoner to a suitable facility is the proper procedural vehicle.

the Magistrate's Order denying his Motion for Transfer to Massachusetts DYS, T.C. requests that the Court convert this appeal to a Motion for Injunctive Relief pursuant to *Ex Parte Young*, 209 U.S. 123, 159 (1908), naming the Marshals for the District of Massachusetts as defendants pursuant to *Philadelphia Co. v. Stimson*, 223 U.S. 605, 621 (1912)(extending motions for injunctive relief against state actors to federal actors.). *See, Kin-Hong v. United States*, 926 F. Supp. 1180 (D. Mass. 1996) (wherein the District Court converted a direct appeal of a detention order in an extradition case to a motion for relief pursuant to 28 U.S.C. § 2241.)  In such case, T.C. seeks to enjoin the Marshals from jailing T.C. in New Jersey, Connecticut, or any other jail that does not meet the criteria of a "proper jail" pursuant to 18 U.S.C. § 3184 for a juvenile such as T.C. As argued *supra*, Mass DYS is the proper jail contemplated by the statute under the circumstances of this case.

## III.   ALTERNATIVELY, T.C. SHOULD BE RELEASED ON BOND

Alternatively, T.C. moves for review of the Magistrate Judge's July 9, 2024 Detention Order, Dkt. 59, so that he can be released on bond. T.C. does not pose any serious risk of flight. He never fled the jurisdiction or the accident. To the extent that he came to the United States rather than remain in Turkey, he was sixteen at the time of the accident and obeyed his mother, who decided they should leave for the United States where they have close family. T.C. has no independent resources or travel documents. It is unclear how he could flee if subject to the conditions of release (including GPS monitoring)[16] and is placed in the custody of his Massachusetts-based aunt. Likewise, T.C. does not pose any threat to the community, and the government has never argued otherwise.

---

[16] Defense counsel for T.C. contacted SCRAM Systems, which supplies GPS bracelets for courts throughout the Commonwealth of Massachusetts, and provided the Court with a copy of the proposed contract for T.C. to be placed on GPS monitoring. Dkt. 86.

"Special circumstance" in this case readily exists, considering T.C.'s age and his continued detention at Essex ███████████████████████████████████████ ████████████████████████████████████, are quintessential "special circumstances" warranting bail. *See Hu Yau-Leung v. Soscia*, 649 F.2d 914, 920 (2d Cir. 1981) (special circumstances existed for 16-year-old British subject to extradition proceedings); *see also Matter of Extradition of Sidali*, 868 F. Supp. 656, 658 (D.N.J. 1994) ("this single factor may in the appropriate case amount to 'special circumstance'").

Furthermore, the extradition request from the Turkish government to the United States Secretary of State omitted key details concerning T.C. and his alleged violations of law that if included would potentially have barred T.C.'s arrest by the United States government. Perhaps most notably, the Turkish government has not obtained a complaint or filed a formal accusation such as an indictment charging T.C. with any crime – a necessary predicate for extradition pursuant to Article 1 and 7 of the despite having sought T.C.'s arrest and extradition.[17]  Rather, the Turkish government relied solely on evidence of its investigation. There remains no formal charge against T.C. although the US arrest warrant was issued on March 5 and the arrest occurred 62 days ago. Similarly, the Turkish government omitted that T.C. is a U.S. born citizen from the body of the lengthy extradition request,[18] such that the United States government may well have been unaware of its ability to exercise discretion as to T.C.'s extradition that is included in Article 4 of the Treaty

---

[17] T.C. filed a Motion to Dismiss, Dkt. 87, the Turkish extradition request for *inter alia* the failure of Turkey to have formally charged or indicted T.C. and the Turkish government's failure to inform the Secretary of State, who has discretion not to pursue extradition, that its request to arrest and extradite concerned a natural born U.S. citizen.

[18] In a 152-page extradition request the only reference to T.C.s place of birth, Exeter, N.H., was in the arrest warrant (which had no details concerning his citizenship status). The only reference to his US citizenship was the passenger list provided by the airline.

when a country is asked to extradite its own citizens. Finally, the Turkish government omitted from its declarations that the death of the alleged victim did not result from T.C.'s conduct alone, but rather from an intervening cause that being the failure of first responders to provide proper and timely medical care based on their failure to take the victim to a hospital for medical care for over an hour. These various challenges to the underlying extradition request will not only take time to litigate, extending T.C.'s detention, but also constitute "special circumstances" that further warrant release.

### IV.   CONCLUSION

Based on all of the foregoing, T.C. respectfully requests this Honorable Court to review the Magistrate Judge's July 16, 2024 Order, Dkt. 71, denying T.C.'s transfer to Mass DYS and to order such transfer under 18 U.S.C §3184. Alternatively, T.C. requests this Honorable Court to review the Magistrate Judge's July 9, 2024 Detention Order, Dkt. 59, so that he be released on any conditions this Honorable Court believes necessary to sufficiently mitigate any serious risk of flight.

Respectfully Submitted,

T.C., a Juvenile
By his attorneys,

*/s/ Martin G. Weinberg*
Martin G. Weinberg, Esq.
BBO #519480
20 Park Plaza
Suite 1000
Boston, MA 02116
(617) 227-3700

*/s/ Victoria Kelleher*
Victoria Kelleher
Kelleher & Maceo, P.C.
BBO #637908
53 State Street
Suite 500
Boston MA 02109
978-744-4126

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was served on all counsel of record this day, August 16, 2024, and with the United States District Court, District of Massachusetts, 1 Courthouse Way, Boston, 02210.

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.

**EXHIBIT 1 - Dr. Atkins Report**

# Elliot L. Atkins, Ed.D., P.A.

## Clinical and Forensic Psychology

651 Route 73 North
Suite 105
Marlton, New Jersey 08053

Ph: (856) 983-6151
Fax: (856) 983-3426
elliotatkins@msn.com

August 15, 2024

Martin G, Weinberg, Esquire
20 Park Plaza
Suite 1000
Boston, MA 02118



Martin Weinberg, Esquire

August 15, 2024
Page 2 of 4

Martin Weinberg, Esquire

August 15, 2024
Page 3 of 4



Martin Weinberg, Esquire
August 15, 2024
Page 4 of 4



Respectfully,

Elliot L. Atkins, Ed.D.
Licensed Psychologist

e-mail:  Elliotatkins@MSN.com

## Elliot L. Atkins, Ed.D.
## 651 Route 73 North
## Suite 105
## Marlton, NJ 08053
**P:  856-983-6151**
**F:  856-983-3426**

**CURRICULUM VITAE**

**ELLIOT L. ATKINS, ED.D.**

**OFFICE:**  651 Route 73 North
Suite 105
Marlton, NJ 08053
(856) 983-6151
Fax:  (856) 983-3426
E-mail:  elliotatkins@MSN.com
Website: www.elliotatkins.com

**EDUCATION:**  Temple University; Ed.D. School Psychology.  January, 1981.
Temple University; Certification, School Psychology.  December, 1972.
Temple University; M.A. Psychology.  May, 1970.
Temple University (Tyler Campus); B.F.A.  January, 1967.

**EXPERIENCE:**

**1977 – present:**  Private forensic, clinical and consulting practice.
- Licensed for independent practice in Pennsylvania (PS-002537-L) and in New Jersey (SI-01785).
- Registered National Registry of Health Service Providers in Psychology (31956).
- Certified Association of State and Provincial Psychology Boards Mobility Program; Professional Qualification in Psychology (CPQ #2456)

**2009 – present:** Trial Consultant, United States Air Force, The Judge Advocate General's Corps

**1983 – 1987:**  President and founder Cokenders, Inc., a private comprehensive, multidisciplinary treatment program for cocaine abusers.

**1978 – 1980:**  Psychological Consultant to the Multidisciplinary Team Support Project, School District of Philadelphia.

**1975 – 1978:**  Psychologist, School District of Philadelphia.

**1973 – 1979:**  Psychologist and Director of Adolescent Services, Help, Incorporated, a clinic-based substance abuse treatment and intervention program for adults and adolescents.

**1974 – 1975:**  Project Director, Students Concerned with Public Health, The School District of Philadelphia, a school and community based mental health intervention and referral network.

**1973 – 1975:**  Consultant, City of Philadelphia, Managing Director's Office, Coordinating Office for Drug and Alcohol Programs.

**1973 – 1975:**  Consultant, Engineering Consultation and Publications, Inc., Upper Darby, PA, developer of evaluation research programs for social service and mental health agencies.

**1973:**  Consulting Psychologist, Achievement through Counseling and Training (ACT), Philadelphia, PA, an adolescent and adult drug treatment program.

**1973:**  Doctoral Internship, alternative program for disturbed adolescents, School District of Philadelphia, a school-based alternative education program.

**1972:**  Doctoral Internship, The Woods School, Langhorne, PA, a residential school for emotionally disturbed and brain damaged children.

## PUBLICATIONS:

Author, chapter: Remote combat exposure and moral injury from drone operations: The cost of a new form of warfare, *Preventing and Treating the Invisible Wounds of War,* 2023

Driving while manic: Differentiating symptoms of bipolar disorder from intoxication, American Journal of Forensic Psychology, Volume 40, Issue 3, 2022

Author, chapter: Collaboration between attorney and forensic mental health professional in working with criminal defendants on the autism spectrum, *Representing People with Autism Spectrum Disorder: A Practical Guide for Criminal Defense Lawyers*, 2020

Co-author, chapter: Mitigation: Utilizing the Forensic Mental Health Professional, *Representing People with Mental Disabilities: A Criminal Defense Lawyers Guide,* 2018

 "Part Two: Borderline Personality Disorder: It's Use in Mitigation." For the Defense, September 2016

"Recognition and Understanding of Borderline Personality Disorder." For the Defense,  April 2016

Co-author with Valerie McClain and Michael Perlin, chapter: Death Penalty, *Handbook of Forensic Psychology and Forensic Sociology,* Springer Publications, 2013

"The Link between Borderline Personality Disorder and Homicidal Behavior." American Journal of Forensic Psychology, Volume 31, Number 2, 2013

Co-author with Kenneth Weiss, chapter: Capacity to Waive *Miranda* Rights, *Handbook of Forensic Assessment:  Psychological and Psychiatric Perspectives*, Drogin, E.Y., Dattilio, F.M., Sadoff, R.L., Gutheil, T.G., Wiley Publications, 2011.

Co-author with Clarence Watson, chapter: Sentencing, *Handbook of Forensic Assessment: Psychological and Psychiatric Perspectives*, Drogin, E.Y., Dattilio, F.M., Sadoff, R.L., Gutheil, T.G., Wiley Publications, 2011.

"Forensic Skills Workshop." <u>American Journal of Forensic Psychology</u>, Volume 27, Number 4, 2009

"Forensic Psychological Consultation in US Death Penalty Cases in State and Federal Courts." <u>American Journal of Forensic Psychology</u>.  Volume 25, Number 3, 2007.

"Admissibility of Expert Psychological Testimony in the Era of *Daubert*:  The Case of Hedonic Damages." <u>American Journal of Forensic Psychology</u>.  Volume 18, Number 2, 2000.

"Therapist-Patient Sexual Boundary Crossing:  A Collaborative Model for Attorneys and Mental Health Professionals", in the American Psychological Association/American Bar Association, joint conference on <u>Psychological Expertise and Criminal Justice</u>, Conference Publication. October, 1999.

"Denial of Pregnancy and Neonaticide During Adolescence:  Forensic and Clinical Issues." <u>American Journal of Forensic Psychology</u>.  Volume 17, Number 1, 1999.

"Post-Verdict Psychological Consultation in the Federal Courts." <u>American Journal of Forensic Psychology</u>.  Volume 14, Number 3, 1996.

"Preparing for Sentencing in the Federal Courts:  Use of Mental Health Consultation in the Development of Departure Strategies." <u>The Champion</u>.  March, 1995.

"When the Boundary is Crossed:  A Protocol for Attorneys and Mental Health Professionals." <u>American Journal of Forensic Psychology</u>.  Volume 11, Number 3, 1993.

"When the Boundary is Crossed:  A Protocol for Attorneys and Mental Health Professionals." <u>American Journal of Forensic Psychiatry</u>.  Volume 14, Number 3, 1993.

"Use of Sodium Amytal in an Insanity and Diminished Capacity Defense of a Capital Murder Case." <u>American Journal of Forensic Psychology</u>.  Volume 9, Number 3, 1991.

Dissertation:  "Pretreatment Drug Use by Adolescents Entering a Multi-Agency Polydrug Abuse Treatment Program."  Temple University, January, 1981.


**PRESENTATIONS:**

Presenter: <u>Client Mental Health Issues in White Collar</u> Cases CLE, Women's White Collar Defense Association Forum: WatercoolerPLUS, May 2023

Presenter: <u>Does Someone with Dissociative Identity Disorder have Agency when their Alter Commits a Crime?</u> CE, 37th Annual Symposium of the American College of Forensic Psychology, April 2022

Panel Chairman: Forensic Skills Workshop, CE, 37th Annual Symposium of the American College of Forensic Psychology, April 2022

Presenter: <u>Domestic/Child Abuse and Filicide; Parental Fitness Evaluations: Ethical Issues and Protective Measures,</u> 36th Annual Symposium of the American College of Forensic Psychology, March 2021

Panel Chairman: Forensic Skills Workshop, CE, 36th Annual Symposium of the American College of Forensic Psychology, March 2021

Presenter: <u>Addressing Day-to-Day Psychological Challenges in the COVID-19 World,</u> PACDL – Continuing Education Webinar, December 2020

Panel Chairman: Forensic Skills Workshop, CE, 35th Annual Symposium of the American College of Forensic Psychology, San Diego, California, April, 2019

Presenter: <u>Representing people with mental disabilities: A practice webinar for criminal defense lawyers,</u> American Bar Association – Continuing Education Webinar Series, February 2019

Presenter: <u>Traveling to meet an undercover agent,</u> 34th Annual Symposium of the American College of Forensic Psychology, San Diego, California, April, 2018

Panel Chairman: Forensic Skills Workshop, CE, 34th Annual Symposium of the American College of Forensic Psychology, San Diego, California, April, 2018

Presenter: <u>Undiagnosed autism spectrum disorder (previously Asperger's syndrome) in child pornography defendants,</u> 33rd Annual Symposium of the American College of Forensic Psychology, San Diego, California, April, 2017

Panel Chairman: Forensic Skills Workshop, CE, 33rd Annual Symposium of the American College of Forensic Psychology, San Diego, California, April, 2017

Panel Chairman: Forensic Skills Workshop, CE, 32nd Annual Symposium of the American College of Forensic Psychology, San Diego, California, March, 2016

Panel Chairman: Forensic Skills Workshop, CE, 31st Annual Symposium of the American College of Forensic Psychology, San Diego, California, April, 2015

Presenter: <u>Psychoanalysis and the Law: The Interdisciplinary contributions of Robert Sadoff, Forensic Psychiatrist,</u> American Psychoanalytic Association – 2015 National Meeting, New York, February 2015

CE Presentation: <u>Truth serum – current legal and psychological perspectives,</u> 30th Annual Symposium of the American College of Forensic Psychology, San Diego, California, March 2014

CE Presentation: <u>The insanity defense and beyond,</u> 30th Annual Symposium of the American College of Forensic Psychology, San Diego, California, March 2014

Panel Chairman: Forensic Skills Workshop, CE, 30th Annual Symposium of the American College of Forensic Psychology, San Diego, California, March 2014

CE Presentation: <u>The forensic psychologist as a trial consultant,</u> 29th Annual Symposium of the American College of Forensic Psychology, San Diego, California, April 2013

Panel Chairman: Forensic Skills workshop, CE, 29th Annual Symposium of the American College of Forensic Psychology, San Diego, California, April 2013

CE Presentation: <u>The role of the forensic psychologist in the mitigation phase of the death penalty trial,</u> 29th Annual Symposium of the American College of Forensic Psychology, San Diego, California, April 2013

Panel Chairman: Forensic Skills workshop, CE, 28th Annual Symposium of the American College of Forensic Psychology, San Francisco, California, April 2012

CE Presentation: <u>False confessions: What forensic psychologists and attorneys need to know,</u> 28th Annual Symposium of the American College of Forensic Psychology, San Francisco, California, April 2012

Panel Chairman: Forensic Skills workshop, CE, 27th Annual Symposium of the American College of Forensic Psychology, San Diego, California, March 2011

CE Presentation: <u>Borderline Personality Disorder and Murder: Areas of Consideration for Forensic Psychologists and Lawyers,</u> 27th Annual Symposium of the American College of Forensic Psychology, San Diego, California, March 2011

Panel Chairman: Forensic Skills workshop, CE, 26th Annual Symposium of the American College of Forensic Psychology, San Francisco, California, April 2010

Panel Member: <u>Federal Sentencing: Tough Cases – Examination of Challenging Sentencings,</u> CLE, Pennsylvania Association of Criminal Defense Lawyers, Philadelphia, Pennsylvania, November 2009

CLE Presentation: <u>Interfacing with the Forensic Mental Health Consultant,</u> Montgomery County Inns of Court, Ambler, Pennsylvania, October, 2009

Panel Chairman:  Forensic Skills workshop, CE, 25th Annual Symposium of the American College of Forensic Psychology, San Diego, California, March, 2009.

CE presentation:  <u>Internet Fantasy and Prediction</u>, 24th Annual Symposium of the American College of Forensic Psychology, San Francisco, California, April, 2008.

Panel Chairman:  Forensic Skills workshop, CE, 24th Annual Symposium of the American College of Forensic Psychology, San Francisco, California, April, 2008.

Panel Chairman:  Forensic Skills workshop, CE, 23rd Annual Symposium of the American College of Forensic Psychology, Santa Fe, New Mexico, May, 2007.

Panel Chairman:  Forensic Skills workshop, CE, 22nd Annual Symposium of the American College of Forensic Psychology, San Francisco, CA , March, 2006.

CE, presentation:  <u>Forensic Psychological Consultation in US Death Penalty Cases in State and Federal Courts</u>, 22nd Annual Symposium of the American College of Forensic Psychology, San Francisco, CA, March, 2006.

CME presentation:  <u>Pseudocyesis and Infant Abduction</u>, Seminar, University of Pennsylvania, Philadelphia, November, 2005.

Presentation:  <u>Psychological Forensic Contributions In U.S. Death Penalty Cases In State and Federal Courts</u>, 14th World Congress of Criminology, Philadelphia, PA, August, 2005.

Panel Chairman:  Forensic Skills workshop, CE, 21st Annual Symposium of the American College of Forensic Psychology, Newport Beach, CA, April, 2005.

CE Presentation:  <u>Two Cases of Childhood Kidnappings</u>, 21st Annual Symposium of the American College of Forensic Psychology, Newport Beach, CA, April, 2005.

CE Presentation:   <u>A Successful Insanity Defense in a Double Parricide Case</u>, 20th Annual Symposium of the American College of Forensic Psychology, San Francisco, CA, April, 2004.

Panel Chairman:  Forensic Skills workshop, CE, 20th Annual Symposium of the American College of Forensic Psychology, San Francisco, CA, April, 2004.

CME Presentation:  <u>Collaboration Among Forensic Mental Health Professionals</u>, Seminar, University of Pennsylvania, Philadelphia, PA, January, 2004.

Panel Chairman:  Forensic Skills workshop, CE, 19th Annual Symposium of the American College of Forensic Psychology, Palm Springs, CA, April, 2003.

CME Presentation:  Practical Issues in Forensic Psychiatry, Seminar, University of Pennsylvania, Philadelphia, PA, November, 2002.

Presented CLE workshop:   Post-Daubert Admissibility of Forensic Psychological Evidence and Testimony in Divorce and Custody Cases, American Academy of Matrimonial Lawyers, Advanced Family Law CLE program, Boston, MA, April, 2001.

Presented CLE workshop:  What is Mitigating Evidence and How to Find it:  The Role of Downward Departures, NACDL's Midwinter Meeting & Seminar, Las Vegas, NV, February, 2001.

Presented CE workshop:  Video Peeping Toms:  Developing Trends, 16th Annual Symposium of the American College of Forensic Psychology, Newport Beach, California, April, 2000.

Presentation:   Therapist-Patient Sexual Boundary Crossing:  A Collaborative Model for Attorneys and Mental Health Professionals, American Psychological Association/American Bar Association, joint conference on Psychological Expertise and Criminal Justice, Washington, DC, October, 1999.

Chaired symposium:  Daubert as Gatekeeper:  Attempts to Quantify Enjoyment of Life, 107th Annual Convention of the American Psychological Association, Boston, MA, August, 1999.

Presented CLE workshop:  Expert Psychological Damage Testimony in the Civil Arena, International Bar Association, Boston, MA, June, 1999.

Presented CE program:  Admissibility of Expert Psychological Testimony in the Era of Daubert, American College of Forensic Psychology, Santa Fe, NM, April, 1999.

Presented CLE program:   The Use of Forensic Psychological Consultation and Testimony, 1999 ATLA - NJ Boardwalk Seminar, Atlantic City, NJ, April, 1999.

Presented CE program:  Denial of Pregnancy and Neonaticide During Adolescence:  Forensic and Clinical Issues, American College of Forensic Psychology, San Francisco, CA, May, 1998.

Presented CE program:  Professional Liability Issues in Therapies Involving Abuse Memories, Psychology and the Law Conference:  South Jersey Psychological Association, Voorhees, NJ, April 3, 1998.

Presented CE program:  Post-Verdict Psychological Consultation in the Federal Courts, American College of Forensic Psychology, New Orleans, LA, March, 1996.

Presented CLE program:  Preparing for Sentencing in the Federal Courts, Pennsylvania Association of Criminal Defense Lawyers, Harrisburg, PA, December 10, 1994.

Presented CLE program:  Psychological Defenses in the '90s, The Philadelphia Bar Association's Bench/Bar Conference, Philadelphia, PA, December 1, 1994.

Presented CLE program:  Use of Experts in Employment Discrimination Matters, Practicing Law Institute, New York, New York, June, 1994.

Presented CE program:  Patient/Therapist Boundary Violations:  A Protocol for Attorneys and Mental Health Professionals, XX<sup>th</sup> International Congress of Law and Mental Health, Montreal, Quebec, Canada, June, 1994.

Presented CE program:  Therapist/Patient Sexual Boundary Crossing:  A Psycholegal Protocol, Pennsylvania Psychological Association, Annual Convention in Pittsburgh, June, 1993.

Presented CE program:  Treating the Patient Sexually Victimized in Therapy, American College of Forensic Psychology, Santa Fe, New Mexico, May, 1993.

Presented CME program:  Treating the Patient Sexually Victimized in Therapy, American College of Forensic Psychiatry, Santa Fe, New Mexico, April, 1993.

Presented workshop:  The Assessment of Hedonic Loss:  Examining the Psychologist's Role, Charleston, West Virginia, October, 1992.

Presented CE program:  An Insanity and Diminished Capacity Defense in Both the Trial and Sentencing Phases of a Capital Murder Case, American College of Forensic Psychology, Newport Beach, California, Spring, 1991.

Presenter:  Camden County College Workshop on Cocaine Abuse, The Mental Health Association of South Jersey, 1987.

Panel Member:  Adolescent Sexuality Concerns; Albert M. Greenfield School, Philadelphia, PA, 1986.

Presenter:  School District of Philadelphia, Principal's Conference on Drug Abuse, 1975.

Presenter:  Community Youth Action Council, Montgomery County, PA, Spring Conference for Educational Administrators, 1973.

Workshop presenter:  The School Psychologist and Adolescent Drug Abuse, New Jersey Association of School Psychologists, 1973.

Presented paper:  The Role of the School Psychologist in Drug Intervention, American Psychological Association, San Juan, Puerto Rico, 1972.

Team Leader:  Philadelphia District Eight Drug Abuse Project, 1971-1972.

**ASSOCIATIONS:**

Member, American Psychological Association.

Member, APA Division 41:  Psychology and The Law.

Fellow, Pennsylvania Psychological Association.

Member, New Jersey Psychological Association.

Member, Board of Education, Kelman Academy, Cherry Hill, NJ 1981-1983.

Member, Board of Directors, Help, Inc., 1977-1982.

Member, Board of Directors, Onwards, Inc., a rehabilitation program for women ex-offenders, 1977-1980.

Member, Philadelphia Primary Prevention Forum, 1973-1976.

**ACADEMIC/CONSULTING ACTIVITIES:**

Guest Speaker: <u>Working with the Forensic Mental Health Expert - Mental Disabilities and the Criminal Justice System Podcast</u>, July 2024

Guest Lecturer: <u>The Intersection of Mental Disabilities and the Criminal Justice System – Selecting/Working with Experts,</u> Gonzaga University School of Law, February 2022

Consultant, Commonwealth v. William Cosby - Defense Team re: cross-examination of defense expert and complainant, 2017

Consultant, Office of the Public Defender for New Jersey - Re: Constitionality of polygraphing of paroled sex offenders, Trenton, NJ, 2013-2014

Consultant, Commonwealth v. Jerry Sandusky – Defense Team re: cross-examination of complainants, 2012

Consultant, Screen Gems/TriStar Pictures, February, 2008 – 2009.

Consultant, Wolves Offered Life and Friendship Sanctuary (W.O.L.F.), 2006 – 2009

Consultant, Menu Pet Foods Litigation, Denver, CO, 2007.

Consultant, Pit Bull Litigation, Denver County, CO, 2007.

Clinical Supervisor, Doctoral Internship program, Drexel University, Philadelphia, PA, 2002 – 2008.

Member, Villanova School of Law and Allegheny University of the Health Sciences Doctoral Dissertation Committee, joint J.D./Psy.D. program, 1998 - 2008.

Consultant, Hampton Hospital, Westampton, New Jersey, 1990 – 2005.

Adjunct Clinical Assistant Professor, Widener University, 1989-1991.

Clinical Supervisor, Doctoral Internship program, Hahnemann University, Philadelphia, PA, 1987-1989.

Consultant, Modern Health Management, Inc., Marlton, NJ, 1984-1987.

Consultant, Golden Cradle Adoption Services, 1984-1986.

Consultant, Association for Retarded Citizens, Philadelphia, PA, 1979-1982.

Consultant, Pennsylvania House of Representatives, Special Subcommittee on Drug and Alcohol Abuse, 1973.

**TESTIMONY:**

**Federal Courts:**  Delaware, Idaho, Northern New Jersey, Southern New Jersey, Eastern District of Pennsylvania, Middle District of Pennsylvania, McGuire Air Force Base, Beale Air Force Base; Scott Air Force Base

**State Courts:**  Maryland, New Hampshire, New Jersey (Atlantic County, Burlington County, Camden County, Cape May County, Cumberland County, Essex County, Gloucester County, Hudson County, Hunterdon County, Mercer County, Middlesex County, Salem, Warren County), New York, Pennsylvania (Bradford County, Bucks County, Chester County, Clearfield County, Dauphin County, Delaware County, Erie County, Lackawanna County, Lancaster County, Luzerne County, Monroe County, Montgomery County, Philadelphia County, Pike County, Schuylkill County, Venango County), South Dakota, Texas

**Consultation:** United States:  Arizona, California, Colorado, Delaware, District of Columbia, Florida, Georgia, Idaho, Illinois, Louisiana, Maryland, Massachusetts, Michigan, Montana, New Hampshire, New Jersey, New Mexico, Nevada, New York, Pennsylvania, Texas, Virginia, West Virginia

Foreign:  France, Indonesia, Thailand, United Arab Emirates, Venezuela, Madagascar

<u>Recent courtroom testimony</u>:

- State of NJ v. Antonio Lopez, Morris County, NJ; 24
- State of NJ v. Jose Galdames-Andino, Middlesex County, NJ; 24
- Commonwealth v. Steven Reaney, Chester County, NJ; 23
- State of NJ v. Marisa Rivera, Burlington County, NJ; 23
- Commonwealth v. Zeferino Martinez, Luzerne County, PA; 23
- State of NJ v. Thomas Theodore Conrad, Essex, NJ; 23
- Commonwealth v. Jonathan Howson, Mercer County, PA; 23
- Commonwealth v. Tyshon Perry, Chester County, PA; 22
- Commonwealth v. James Kratz, Chester County, PA; 22
- State of NJ v. Eric Campbell, Burlington County, NJ; 22
- US v. Reece Line, Eastern District of Pennsylvania; 22
- State of NJ v. Adham Helwani, Bergen County, NJ; 22
- State of NJ v. Mary Ellen Deane, Ocean County, NJ; 21
- Commonwealth v. Russell Shoatz, Philadelphia County, PA; 21
- Commonwealth v. Kyle Vo, Chester County, PA; 21
- Batterman v. Batterman, Montgomery County, PA; 21
- LaVan v. LaVan, Burlington County, NJ; 21
- State of SD v. Kendra Lindblad, Lincoln County, SD; 20
- US v. James Hardcastle, Eastern District Court of PA; 20
- Commonwealth v. Shawn Vanderslice, Chester County, PA; 19
- Commonwealth v. Christopher Tevis, Chester County, PA; 19
- Commonwealth v. Mario Astudillo, Chester County, PA; 19
- Commonwealth v. Steven McGovern, Chester County, PA; 19
- US v. Daniel Helpingstine, Scott AFB, Il; 19
- Commonwealth v. Ummad Rushdi, Delaware County, PA; 19
- Commonwealth v. William Gardner, Chester County, PA; 19
- Commonwealth v. DeJohn Lee, Delaware County, PA; 19
- Commonwealth v. Jeromy Jones, Delaware County, PA; 19
- Commonwealth v. Reginald Williams, Delaware County, PA; 19
- US v. Bly, District Court of New Jersey; 19
- State of NJ v. Quamir Gerald, Atlantic County; NJ; 19
- Commonwealth v. Rakeem Akbar, Chester County; PA; 19
- Commonwealth v. Derrick Jones, Delaware County, PA; 19
- Commonwealth v. James McGrory, Delaware County, PA; 18
- Commonwealth v. Tyler Lampe, Chester County, PA; 18
- Commonwealth v. Sincere Brown, Chester County, PA; 18
- US v. Michael Shore, Eastern District of Pennsylvania; 18
- Commonwealth v. Christopher Lewis, Chester County, PA; 18
- Commonwealth v. Richard Mazeffa, Bucks County, PA; 18
- State of NJ v. Robert Forker, Gloucester County, NJ; 18
- Commonwealth v. Shakita Lewis, Delaware County, PA; 18
- Commonwealth v. Christopher Peterson, Chester County, PA; 18
- US v. Mehdi Nikparvar-Fard; Eastern District of PA; 18
- US v. Eric Zeigler, District of NJ; 17
- Commonwealth v. George Torsilieri, Chester County, PA; 17

- US v. Michael Donnelly, Eastern District of Pennsylvania - Easton; 17
- Commonwealth v. Juan Baez, Chester County, PA; 17
- Commonwealth v. Carlos Flores-Sanchez, Dauphin County, PA; 17
- Commonwealth v. William Brown, Chester County, PA; 17
- State of NJ v. Alshadeem Greene, Essex County, NJ; 17
- Commonwealth v. Ummad Rushdi, Delaware County, PA; 17
- US v. SrA Marcus Mancini, Beale Air Force Base, CA; 17
- Commonwealth v. Tajin Sarin, Delaware County, PA; 17
- State of NJ v. Andrea Rivera, Camden County, NJ; 17
- Commonwealth v. Carrington Walls, Chester County, PA; 16
- Commonwealth v. Gupree White, Chester County, PA; 16
- State of TX v. Ronald Locus, Bexar County, TX; 16
- Commonwealth v. James Deiter, Chester County, PA; 16
- Commonwealth v. Darrel Burt, Delaware County, PA; 16
- State of NJ v. Christian Powell, Gloucester County, NJ; 16
- State of NJ v. David Morris, Warren County, NJ; 16
- State of NJ v. Carl Guthe, Burlington County, NJ; 16
- State of NJ v. Kenneth Gerber, Burlington County, NJ; 16
- US v. Ivan Boothe, Eastern District of Pennsylvania; 15
- US v. Randolph Scott, Eastern District of Pennsylvania; 15
- Commonwealth v. Gary Flyte, Monroe County, PA; 15
- US v. Cori Merklinger, Eastern District of Pennsylvania; 15
- Commonwealth v. Pellon, Delaware County, PA; 14
- State of NJ v. Morris, Warren County, NJ; 14
- Commonwealth v. Thompson, Chester County, PA; 14
- Commonwealth v. Agosto-Diaz, Chester County, PA; 14
- JB et al. v. NJ State Parole Board, Trenton, NJ; 14
- US v. Bitler, Eastern District of Pennsylvania; 14
- State of NJ v. Morris, Warren County, NJ; 14
- Commonwealth v. Ives, Delaware County, PA; 14
- Commonwealth v. Oaks, Philadelphia County, PA; 14
- Commonwealth v. Frame, Chester County, PA; 14
- State of NJ v. Morris, Warren County, NJ; 13
- State of NJ v. Medina, Hudson County, NJ; 13
- Commonwealth v. Wilkinson, Chester County, PA; 13
- Commonwealth v. Cleveland, Delaware County, PA; 13
- Commonwealth v. DeSisti, Bradford County, PA; 13
- Commonwealth v. Carrallo, Delaware County, PA; 12
- Commonwealth v. DeSisti, Bradford County, PA; 12
- Commonwealth v. Musser, Dauphin County, PA; 12
- William J. Hammer v. Douglas W. Thomas, Cumberland County, NJ; 12
- Commonwealth of PA v. Sandusky, Centre County, PA; 12
- State of NJ v. Case, Atlantic County, NJ; 12
- State of NJ v. Darden, Atlantic County, NJ; 11
- Commonwealth of PA v. Hartman - II, Bucks County, PA; 11
- US v. Devine, Eastern District of Pennsylvania; 11
- State of NJ v. Morano, Atlantic County, NJ; 11
- Commonwealth of PA v. Burn, Chester County, PA; 11

- Commonwealth of PA v. Loretto, Chester County, PA; 11
- Ferry v. Weiss, et al., Philadelphia County, PA; 11
- Commonwealth of PA v. Hartman - I, Bucks County, PA; 11
- Commonwealth of PA v. Reed, Chester County, PA; 10
- Commonwealth of PA v. Cassidy, Delaware County, PA; 10
- US v. TSgt Trompe, McGuire Air Force Base, NJ; 10
- Commonwealth of PA v. Gray, Chester County, PA; 10
- Commonwealth of PA v. DePena, Philadelphia County, PA; 10
- State of NJ v. Roberts, Ocean County, NJ; 10
- US v. Booker, Eastern District of Pennsylvania; 10
- Commonwealth of PA v. Donkewicz - II, Chester County, PA; 10
- Commonwealth of PA v. Rosario-Torres, Pike County, PA; 10
- Commonwealth of PA v. Donkewicz - I, Chester County, PA; 10
- Commonwealth of PA v. Jarjisian, Chester County, PA; 10
- Commonwealth of PA v. Wessner, Chester County, PA; 10
- US v. SSgt Frey, McGuire Air Force Base, NJ; 10
- US v. Hapgood, Southern District of NJ; 10
- US v. Kilkeary, Central District of NJ; 10
- Commonwealth of PA v. Daly, Chester County, PA; 10
- Commonwealth of PA v. Bailado, Montgomery County, PA; 10
- State of NJ v. Golden, Cape May County, NJ; 10
- US v. DiLacqua, Eastern District of Pennsylvania; 09
- Commonwealth of PA v. Houck, Montgomery County, PA; 09
- Commonwealth of PA v. Shawell, Montgomery County, PA; 09
- State of NJ v. Jovel, Essex County, NJ; 09
- US v. Forte, Eastern District of Pennsylvania; 09
- Commonwealth of PA v. Moses, Delaware County, PA; 09
- Marino/Woytovich v. Bean et al., Berks County, PA; 09
- Pennsylvania Department of State, Bureau of Professional and Occupational Affairs v. MEK, Harrisburg, PA; 09
- Division of Youth and Family Services v. Heather Howard, Monmouth County, NJ; 09
- Commonwealth of PA v. Kane, Lackawanna County, PA; 09
- Commonwealth of PA v. Sardella, Delaware County, PA; 09
- In re: Ferrainola, Delaware County, PA; 09
- Commonwealth of PA v. McCafferty, Philadelphia County, PA; 08
- State of NJ v. Bradshaw, Monmouth County, NJ; 08
- Commonwealth of PA v. Rayford, Chester County, PA; 08
- Commonwealth of PA v. Ball, Chester County, PA; 08
- Commonwealth of PA v. Spotz, Clearfield County, PA; 08
- Commonwealth of PA v. Stickley, Chester County, PA; 08
- State of NJ v. Miraglia, Monmouth County, NJ; 08
- Commonwealth of PA v. Quevada, Montgomery County, PA; 08
- State of NJ v. Hutt, Camden County, NJ; 08
- U.S. V. Newmark, Eastern District of Pennsylvania; 08
- State of NJ v. Singleton, Burlington County, NJ; 08
- U.S. v. Klinman, Eastern District of PA; 08
- Commonwealth of PA v. Spotz, Clearfield County, PA; 08
- Commonwealth of PA v. Zeimer, Chester County, PA; 08

- Chancellor v. Lower Potts Grove School District, et al., Eastern District of Pennsylvania; 08
- Commonwealth of PA v. Strode, Chester County, PA; 07
- Commonwealth of PA v. Librett, Montgomery County, PA; 07
- Commonwealth of PA v. McNeila, Delaware County, PA; 07
- State of NJ v. Cheatum, Monmouth County; NJ; 07
- Commonwealth of PA v. Albert, Bucks County, PA; 07
- Jennings v. Lathrop, Burlington, County, NJ; 07
- Commonwealth of PA  v. Karchevsky, Philadelphia County; 07
- State of NJ v. Cooper, Burlington County, NJ; 07
- Commonwealth of PA v. Ruggieri, Delaware County, PA; 07
- Commonwealth of PA v. Morgan-Cox, Chester County, PA; 07
- Commonwealth of PA v. London, Chester County, PA; 07
- U.S. v. Rosenthal, Eastern District of Pennsylvania; 07
- Commonwealth of PA v. Dasani, Montgomery County, PA; 07
- State of NJ v. Lanneaux, Gloucester County, NJ; 07
- Commonwealth of PA v. Finlay-Rabchuk, Delaware County, PA; 06
- Gallelli v Gallelli, Philadelphia County, PA; 06
- State of NJ v. Miraglia, Monmouth County, NJ; 06
- Commonwealth of Pennsylvania v. Smith, Chester County, PA; 06
- Commonwealth of Pennsylvania v. Jackson, Chester County, PA; 06
- State of NJ v. Russo, Gloucester County, NJ; 06
- Commonwealth of Pennsylvania v. Barrios, Chester County, PA; 06
- Commonwealth of Pennsylvania v. DiFonzo, Montgomery County, PA; 06
- Commonwealth of Pennsylvania v. McKay, Delaware County, PA; 06
- U.S. v. Keefer, Eastern District of Pennsylvania; 06
- Commonwealth of Pennsylvania v. Clarke, Chester County, PA; 06
- Commonwealth of PA v. Fogle, Delaware County, PA; 06
- Commonwealth of PA v. DiFonzo, Montgomery County, PA; 05
- State of NJ v. Marquez, Camden County, NJ; 05
- Commonwealth of Pennsylvania v. Padley, Delaware County, PA; 05
- U.S. v. Blackman, Eastern District of PA; 05
- State of NJ v. Zane, Salem County, NJ; 05
- State of NJ v. Miraglia, Monmouth County, NJ; 05
- Commonwealth of Pennsylvania v. Tyrell, Bucks County, PA; 05
- Commonwealth of Pennsylvania v. Correa, Philadelphia County, PA; 05
- State of NJ v. Melendez, Morris County, NJ; 05
- State of NJ v. Phillips, Monmouth County, NJ; 05
- State of NJ v. Phillips, Monmouth County, NJ; 05
- Commonwealth of Pennsylvania v. Burris, Philadelphia County, PA; 05
- State Board of Medical Examiners v. Scardigli, Mercer County, NJ; 05
- Commonwealth of Pennsylvania v. Jackson, Eastern District of Pennsylvania; 05
- Commonwealth of Pennsylvania v. Coleman, Delaware County, PA; 05
- State of NJ v. Aaronson, Burlington County, NJ; 05
- Commonwealth of Pennsylvania v. Motley, Delaware County, PA; 05
- Commonwealth of Pennsylvania v. Parks, Delaware County, PA; 05
- U.S. v. Wood, Eastern District of PA; 05
- U.S. v. Coladonato, Fed., Delaware; 05
- Schultz v. Schuricht, et al, Philadelphia County, PA; 05

- State of NJ v. Salesky, Burlington County, NJ; 05
- Commonwealth of Pennsylvania v. Gill, Delaware County, PA; 05
- U.S. v. Foisy, Eastern District of PA; 04
- In re:  David Campbell # 04-CV-3064, Lackawanna County, PA; 04
- Commonwealth of Pennsylvania v. Blakeslee, Delaware County, PA; 04
- State of NJ v. Moore, Monmouth County, NJ; 04
- State of NJ v. Cruz, Essex County, NJ; 04
- State of NJ v. Marino, Gloucester County, NJ; 04
- Commonwealth of Pennsylvania v. DiBattista, Delaware County, PA; 04
- Cocozza v. Shanker et al, Atlantic County, NJ; 04
- Commonwealth of Pennsylvania v. Watson, Chester County, PA; 04
- Commonwealth of Pennsylvania v. Viall, Philadelphia County, PA; 03
- State of NJ v. Jefferson, Burlington County, NJ; 03
- State of NJ v. Nastasi, Camden County, NJ; 03
- Commonwealth of Pennsylvania v. Stauffer, Delaware County, PA; 03
- State of NJ v. Marshall, Fed., Southern District of NJ; 03
- Cox v. Taylor Hospital, Eastern District of PA; 03
- U.S. v. Mardinly, Eastern District of PA; 03
- Commonwealth of Pennsylvania v. Alves, Philadelphia County, PA; 03
- U.S. v. Caniglia, Eastern District of PA; 03
- Commonwealth of Pennsylvania v. Waddington, Delaware County, PA; 03
- Floyd v. Floyd, Burlington County, NJ; 03
- U.S. v. Mettinger, Eastern District of PA; 03
- Dawson v. Antinori et al, Camden County, NJ; 03
- Coffey v. Rutstein, Middlesex County, NJ; 03
- Skolnick V. Leibman, Philadelphia County, PA; 03
- State of NJ v. Lippincott, Burlington County, NJ; 03
- Commonwealth of Pennsylvania v. Freeberry, Chester County, PA; 03
- Commonwealth of Pennsylvania v. Keebler, Chester County, PA; 02
- Commonwealth of Pennsylvania v. Bayah, Delaware County, PA; 02
- Commonwealth of Pennsylvania v. Perelman, Bucks County, PA; 02
- Commonwealth of Pennsylvania v. Stevenson, Chester County, PA; 02
- U.S. v. Buoncristiano, Eastern District of PA; 02
- Commonwealth of Pennsylvania v. Bayah, Delaware County, PA; 02
- State of NJ v. Hagen, Morris County, NJ; 02
- State of NJ v. Hightower, Burlington County, NJ; 02
- Commonwealth of Pennsylvania v. Halpern, Delaware County, PA; 02
- Nation v. Nagelschmidt, Camden County, NJ; 02
- Commonwealth of Pennsylvania v. Burns, Philadelphia County, PA; 01
- U.S. v. Massanova, Eastern District of PA; 01
- U.S. v. Cefalo, Middle District of PA; 01
- Leinbach v. Selective Insurance Company, Burlington County, NJ; 01; 02
- U.S. v. Nissenbaum, Eastern District of PA; 01
- Commonwealth of Pennsylvania v. Jones, Philadelphia County, PA; 01
- Commonwealth of Pennsylvania v. Deviney, Chester County, PA; 01
- Commonwealth of Pennsylvania v. Rullo, Delaware County, PA; 01
- Commonwealth of Pennsylvania v. Fay, Delaware County, PA; 01
- Commonwealth of Pennsylvania v. LaRocque, Montgomery County, PA; 01

- U.S. v. Eidson, Eastern District of PA; 01
- Commonwealth of Pennsylvania v. Capocci, Philadelphia County, PA; 01
- State of NJ v. Lembo, Camden County, NJ; 01
- State of NJ v. Johnson, Burlington County, NJ; 01

Recent deposition testimony:

- Campbell v. GCIA, Haddon Township, NJ; 21
- Paciocco v. Phily Diner et al., Marlton, NJ; 18
- Cameron v. Delaware Racing Association, Marlton, NJ; 15
- JB et al. v. NJ State Parole Board, Trenton, NJ; 14
- Barton v. SA Comunale Co., Marlton, NJ; 09
- RS v. ABS, et al., Mt. Laurel, NJ; 09
- Max Seiler, a minor et al. v. Amoroso, et al., Marlton, NJ; 06
- Robinson v. Wagner, et al., Marlton, NJ; 05
- Hickman v. Burger King, Marlton, NJ; 03
- Cox v. Federal Express, Marlton, NJ; 02
- Cocozza v. Papastametos, et al., Marlton, NJ; 02
- Coffey v. Rutstein, Marlton, NJ; 02
- Schwartz v. Quest Diagnostics, Marlton, NJ; 02
- Neisser v. Walsh Brothers, Marlton, NJ; 02
- In the Matter of the Estate of Grace B. Siegel, Deceased,  Marlton, NJ; 01
- Olster v. CNA Financial Corps, Cherry Hill, NJ; 01
- Adair v. Warwick Condo Association, Marlton, NJ; 00
- Capanna v. Richman, Marlton, NJ; 99
- Knox v. Michner, et.al., Marlton, NJ; 99
- Budden v. Rochman, Marlton, NJ; 99
- McPherson v. Dwyer, Cape May County, NJ; 98
- Ramsi v. Vineland Board of Education, et.al., Marlton, NJ; 97
- Bailey v. Singer, et.al., Marlton, NJ; 97
- Ringgold v. Carefirst, Baltimore, MD; 97
- Yslava v. Hughes, et.al., Tucson, AZ; 97
- Matijkiw v. County of Delaware, et.al., Media, PA; 95
- Hibbs v. Toys "R" Us, Marlton, NJ; 95
- McNeil v. Enoch, et.al., San Diego, CA; 95
- Piccone v. Smitherman, et.al., Camden, NJ; 94
- Arbel v. Shoprite, Philadelphia, PA; 93
- Pashko v. Rutgers Casualty, Camden, NJ; 93
- Jimenez v. Amtrak, New Orleans, LA; 93

## Biographical Summary

Dr. Atkins is a clinical, forensic and consulting psychologist who has been in clinical practice since the mid nineteen seventies and has worked in the forensic arena since the mid nineteen eighties.  Dr. Atkins has been admitted as an expert witness before state and federal courts in both the criminal and civil arenas.  He has been called upon by attorneys from across the country to address issues related to substance abuse, competency, criminal state of mind defenses, coercive interrogation/interview techniques and the assessment of both perpetrators and victims of sexual abuse.  He has recently provided consultation to defense counsel in multiple high-profile civil and criminal institutional child sexual abuse cases.  He has been retained by both the prosecution and the defense as a trial consultant in sexual abuse cases by the United States Air Force's Judge Advocate General's office.  Dr. Atkins co-authored two chapters (Capacity to Waive *Miranda* Rights and Sentencing) in the *Handbook of Forensic Assessment: Psychological and Psychiatric Perspectives*. He has co-authored a chapter on death penalty mitigation in the textbook, *Handbook of Forensic Psychology and Forensic Sociology.* He recently co-authored a chapter on mitigation in *Representing People with Mental Disabilities: A Criminal Defense Lawyers Guide.* He is co-authoring a chapter on remote combat trauma in *Ethics, National Security and the Law*

Dr. Atkins recently prepared an amicus brief, and testified on the constitutionality of, polygraphing paroled sex offenders. He has been an adjunct clinical assistant professor at Widener University and has provided clinical supervision for the doctoral internship programs at both Hahnemann and Drexel Universities.  He has been a consultant to municipal, state and federal agencies and legislative bodies on the issue of substance abuse and rehabilitation.  Dr. Atkins has published articles and presented CLE workshops on topics related to the insanity defense, neonaticide, borderline personality disorder, sentencing and the collaboration of clinicians and attorneys regarding the issue of professional boundary violations.  For the past two decades, he has chaired the American College of Forensic Psychology's *Forensic Skills* panel of attorneys and forensic psychologists as they address professional and ethical issues confronting forensic mental health practitioners.