IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| THE EXTRADITION OF | ) | No. 24-mj-01365-DLC |
| T.C. | ) | |

**GOVERNMENT'S CONSOLIDATED OPPOSITION TO T.C.'S MOTIONS
(1) TO REOPEN EXTRADITION HEARING AND FOR RECONSIDERATION
AND (2) TO STAY HIS EXTRADITION**

The government respectfully opposes T.C.'s motion to reopen his extradition hearing and for reconsideration of the Court's certification of extraditability because the indictment's citation to a provision of the Turkish Criminal Code governing a penalty enhancement for conscious recklessness is not a new or different charge warranting reconsideration of the Court's prior finding that T.C.'s conduct, "[a]lthough not intentional . . . was nonetheless reckless." Dkt. 157 at 18. Nor can T.C. show that the Republic of Türkiye ("Türkiye") has violated Articles 7 or 16 of the Treaty on Extradition and Mutual Assistance in Criminal Matters Between the United States of America and the Republic of Turkey, U.S.-Turk., June 7, 1979, 32 U.S.T. 3111 (the "Treaty"). For these same reasons, T.C. cannot show he is likely to succeed on the merits of his claim, and the equities weigh against his requested stay.

**BACKGROUND**

T.C. has now been indicted in connection with the death of one person and injuries to others when he crashed into them while driving his mother's Porsche without a driver's license late at night on March 1, 2024, on a dark and winding road at a speed approximately 87 miles per hour above the speed limit. Within hours of the crash, T.C. and his mother fled Türkiye for the United States, via Cairo, Egypt, and Türkiye has requested T.C.'s extradition pursuant to the Treaty.

On February 11, 2025, following an extradition hearing and after considering the parties' extensive briefing, this Court issued a 38-page Order denying T.C.'s motion to dismiss and certifying T.C.'s extradition to the Secretary of State. *See generally* Dkt. 157. Among other things, the Court found that (1) it had authority to conduct the extradition proceeding, (2) it had jurisdiction over T.C. because he was arrested in Massachusetts, (3) the Treaty was in full force and effect, (4) the charge of causing reckless killing and injury, in violation of Article 85 of the Turkish Criminal Code, was covered by the Treaty, and (5) there was probable cause that T.C. committed that offense. *Id.* In reaching these conclusions, the Court rejected T.C.'s contention that Türkiye was seeking his extradition for "a possible, yet-to-be-determined prosecution," and instead found, consistent with case law considering similarly worded treaties, that the Treaty does not require that T.C. be formally charged with an offense, because the term "charged" is "synonymous with accused," and "the arrest warrant, prosecutor's report, and other documents in the extradition file establish that T.C. is accused of committing the article 85 offense." *Id.* at 20-31. Additionally, the Court cited T.C.'s "driving a Porsche at more than five times the speed limit late at night on a two-lane road and not listening to requests by passengers in the Porsche to slow down" in finding that, "[a]lthough not intentional, such conduct was nonetheless reckless." *Id.* at 17-18; *see also id.* at 31 ("More, the prosecutor's report meticulously sets out the facts, including the warnings to T.C. to slow down and the excessive speed that he drove the Porsche. The report also recounts T.C. taking the corner at an 'extreme high-speed' and losing control of the vehicle. This bears upon T.C. engaging in reckless conduct."); *id.* at 31-33 (probable cause discussion).

T.C. then sought habeas relief under 28 U.S.C. § 2241 on the sole ground that he had not "been charged with an offense" under the Treaty. *See generally T.C. v. Kyes*, No. 24-cv-12458-ADB (D. Mass.) ("Habeas Dkt"), Dkts. 18, 22. The District Court (Burroughs, J.) came "to the

2

same conclusion as did the Magistrate Judge" and agreed with the "many United States courts that . . . found the use of the term 'charged' in a treaty, when unaccompanied by the requirement that a formal charging document be included in the extradition packet, does not require formal charges in the way the United States justice system conceptualizes them." Habeas Dkt. 31 at 11. The District Court also denied T.C.'s request for a stay of his extradition pending an appeal to the First Circuit on the same grounds, after finding that T.C. was not likely to succeed on the merits of his appeal given the "formidable body of caselaw finding that the use of the term 'charged' in a treaty does not require formal charges." Habeas Dkt. 38 at 2.

T.C. also sought humanitarian relief from the Secretary of State or his delegee (hereinafter "the Secretary of State") and filed several motions to extend the deadline to file his appeal brief while he waited for the Secretary of State to either issue a surrender warrant or decline to extradite him. On or about February 17, 2026, the Secretary of State notified T.C. that he intended to issue a surrender warrant. On March 10, 2026, the Chief Public Prosecutor returned an indictment charging T.C. with causing death or injury with conscious recklessness, citing Articles 85(2) and 31(3)—as in the underlying extradition request—and adding a citation to Article 22(3), which provides that a penalty for the offence shall be increased by one third to one half when the "act is conducted with conscious recklessness when the result is foreseen but not desired."[1]

Given that the issuance of an indictment mooted T.C.'s appeal based solely on the argument that he had not been "charged" with an offense, on March 20, 2026, T.C. moved to

---

[1] Attached hereto as Exhibit A is an advance copy of a supplement that the Government of Türkiye provided to the United States on March 31, 2024, and which Türkiye intends to imminently submit to the Department of State through the diplomatic channel. The supplement includes the indictment as well as the text of Article 22 of the Turkish Criminal Code and an explanation that Article 22(3) "does not constitute an independent offence in terms of the Turkish law but it has an aggravating nature."

dismiss his appeal.[2] *T.C. v. Kyes*, No. 25-1752 (1st Cir. Mar. 20, 2026). Simultaneously, T.C. asked this Court to reopen his extradition hearing under 18 U.S.C. § 3184 and reconsider its certificate of extraditability on the ground that the charge in the indictment "materially" differs from the charge presented in the extradition request because of the inclusion of the potential penalty enhancement under Article 22(3). *See* Dkt. 176. Because T.C. cannot show that inclusion of this potential penalty enhancement is manifest error or clearly unjust, his motion should be denied. And because his motion to reopen and for reconsideration lacks merit, T.C.'s motion to stay should likewise be denied.

## ARGUMENT

### I.    Standard of Review

"The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" *Intellectual Ventures I, LLC v. Lenovo Grp. Ltd.*, 392 F. Supp. 3d 138, 140 (D. Mass. 2019) (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006)). "'Motions for reconsideration are appropriate only in limited circumstances: (1) if the moving party presents newly discovered evidence, (2) if there has been an intervening change in the law, or (3) if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust.'" *Id.* (quoting *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009)). "These exceptions are 'narrowly configured and seldom invoked.'" *Id.* (quoting I, 6 F.3d 27, 31 (1st Cir. 1993)).

"In the United States, the procedures for extradition are governed by statute." *United States v. Kin-Hong*, 110 F.3d 103, 109 (1st Cir. 1997). These statutes, 18 U.S.C. §§ 3181 *et seq.*, establish

---

[2] On February 25, 2026, the First Circuit administratively stayed T.C.'s extradition pending the court's review of the merits of his request for a stay pending appeal. *T.C. v. Kyes*, No. 25-1752 (1st Cir. Feb. 25, 2026). With the dismissal of T.C.'s appeal, this stay was dissolved.

"a two-step procedure which divides responsibility for extradition between a judicial officer and the Secretary of State." *Id.* (footnote omitted). "This bifurcated procedure reflects the fact that extradition proceedings contain legal issues peculiarly suited for judicial resolution, such as questions of the standard of proof, competence of evidence, and treaty construction, yet simultaneously implicate questions of foreign policy, which are better answered by the executive branch." *Id.*

Under 18 U.S.C. § 3184, the judicial officer serving as the extradition court—here, the Magistrate Judge—"upon complaint, issues an arrest warrant for an individual sought for extradition" and then conducts a hearing to determine if "the evidence [is] sufficient to sustain the charge under the provisions of the proper treaty." Specifically, the extradition court determines whether (1) it is authorized to conduct the extradition, (2) it has jurisdiction over the fugitive, (3) the applicable treaty is in full force and effect, (4) the treaty covers the offenses for which extradition is sought, and (5) there is probable cause to believe the fugitive committed the alleged offenses. *See* 18 U.S.C. § 3184; *Zanazanian v. United States*, 729 F.2d 624, 626 (9th Cir. 1984). If the Court finds that the requirements for certification are satisfied, it shall provide the certification to the Secretary of State, together with a copy of any testimony taken before the Court, and it shall order the fugitive detained to await the Secretary's final determination regarding surrender. 18 U.S.C. § 3184; *see also Martin v. Warden, Atlanta Pen.*, 993 F.2d 824, 828 (11th Cir. 1993). The Secretary will then decide whether to surrender the fugitive to the requesting country. 18 U.S.C. §§ 3184, 3186; *Escobedo v. United States*, 623 F.2d 1098, 1105 (5th Cir. 1980) ("The ultimate decision to extradite is a matter within the exclusive prerogative of the Executive in the exercise of its powers to conduct its foreign affairs.") (citations omitted).

## II.    T.C. Cannot Show the Decision to Issue a Certificate of Extraditability Was Based on a Manifest Error of Law or Was Clearly Unjust

Here, T.C. does not argue that the Court was not authorized to conduct the extradition or that it did not have jurisdiction over him. T.C. does not suggest that the Treaty is not in full force and effect or that it does not cover the offense for which Türkiye seeks his extradition. T.C. does not point to newly discovered evidence or an intervening change in law. Rather, T.C. argues that the inclusion of a citation to Article 22(3) in the indictment introduces a new issue of probable cause. Dkt. 176 at 4. But his motion makes no attempt to address how the Court's finding that "[a]mple evidence in the extradition file establishes probable cause" is lacking, much less clearly unjust. Dkt. 157 at 32. Nor can he, where the underlying facts of the offense and essential elements remain unchanged. As Türkiye notes in its March 26, 2026, supplement, Article 22(3) "does not constitute an independent offense in terms of the Turkish law but it has an aggravating nature." Ex. A at 9.[3] Thus, the inclusion of a reference to Article 22(3) is not a new "charge," but merely a potential penalty enhancement, similar to drug-weight enhancements under U.S. criminal laws. For example, in *United States v. McHugh*, 769 F.2d 860, 868 (1st Cir. 1985), the defendant was indicted under 18 U.S.C. §§ 841(a)(1), 841(b)(6), and 846. The First Circuit explained that neither Sections 841(a)(1) nor 846 required a specific drug quantity for conviction, while Section

---

[3] Deference to Türkiye's interpretation of its own laws is appropriate because "[e]xtradition proceedings are not vehicles for United States federal courts to interpret and opine on foreign law,' and American extradition courts therefore have consistently cautioned against doing so . . . ." *Noeller v. Wojdylo*, 922 F.3d 797, 805 (7th Cir. 2019); *see also Nezirovic*, 2013 WL 5202420, at *15 ("It would be a grave insult for this court to presume to tell the Government of Bosnia and Herzegovina what is or is not legitimate under Bosnian law."). Deference to Türkiye's interpretation of its own laws is also consistent with the principle of international comity and "respect for the sovereignty of other nations," *Matter of Assarsson*, 635 F. 2d 1237, 1244 (7th Cir. 1980), and avoids the risk that a U.S. court might erroneously interpret the law of a foreign country. *Id.* ("The possibility of error warns us to be even more cautious of expanding judicial power over extradition matters.")

6

841(b)(6) was "an enhanced penalty provision" for an 841(a) offense involving a specific drug weight to be proven at trial. Likewise, the application of Article 22(3) provides for an enhanced penalty for an Article 85 offense if certain factors are proven at trial. It is not an independent offense.

Because the indictment does not include a new charge, there is no basis to reopen the extradition hearing or reconsider the Court's probable cause finding. Consistent with the extradition request, the indictment alleges that T.C., in violation of Article 85(2), caused the death of one person and seriously injured others when he crashed into them while driving his mother's Porsche without a driver's license on a dark and winding road late at night at a speed approximately 87 miles per hour above the speed limit. *Compare* Ex. A (indictment) at 11-17 *and* Dkt. 70-3 (extradition request) at 3 to 9; *see also* Dkt. 114 at 20-21. In certifying extradition, the Court found the evidence was sufficient to establish probable cause that T.C.'s conduct was reckless. *E.g.*, Dkt. 157 at 18 ("Although not intentional, such conduct was nonetheless reckless."). Among other things, the Court found "the prosecutor's report meticulously sets out the facts, including the warnings to T.C. to slow down and the excessive speed that he drove the Porsche . . . . [and] recounts T.C. taking the corner at an 'extreme high-speed' and losing control of the vehicle," which "bears upon T.C. engaging in reckless conduct." *Id.* at 31. T.C. does not argue that this evidence somehow fails to support a probable cause finding on the charge in the indictment (including the conscious recklessness penalty enhancement), because he cannot reasonably do so. Reopening the extradition hearing to reconsider probable cause is not justified and would be a futile exercise.

## III.   Article 7 of the Treaty Has Been Satisfied

Perhaps recognizing this defect in his argument, T.C. relies on the technical argument that Türkiye failed to fulfil its obligations under Article 7 of the Treaty by not previously providing the

text of Article 22. Article 7 requires an extradition request to include, among other things, the "text of the applicable laws of the Requesting Party, including the law defining the offense, the law prescribing the punishment for the offense, and the law relating to the limitation of legal proceedings or the enforcement of the penalty for the offense." Dkt. 70-1 at 14. With respect to the Court's extraditability certification, the primary purpose of this provision of Article 7 is to ensure that the offense for which extradition is sought satisfies the minimum penalty requirement set forth in the Treaty. Here, Article 2 of the Treaty states that an offense is extraditable if it is punishable "by deprivation of liberty at least for a period exceeding one year or by a more severe penalty." Dkt. 70-1 at 9. T.C. does not dispute that the penalty for violating Article 85(2)—with or without the Article 22 penalty enhancement—is punishable by more than a year in prison.

Further, extradition courts have consistently and repeatedly held that proof of penalty enhancements is unnecessary in extradition proceedings so long as the criminal charge—in this case, Article 85(2)—carries a penalty that meets the treaty minimum. *See, e.g.*, *Matter of Extradition of Caro*, 283 F. Supp. 3d 993, 1002 (D. Colo. 2017) (finding that penalty enhancement provisions did not alter the basic terms of the crime for which extradition was sought).

What's more, T.C.'s ultimate penalty is not an issue for this Court to consider, but is a matter reserved for the Secretary of State. The Supreme Court, the First Circuit, and myriad other courts have recognized, under the longstanding rule of non-inquiry, that "questions about what awaits the [fugitive] in the requesting country" are reserved for the Secretary and are not judicially reviewable. *Kin-Hong*, 110 F.3d at 111; *see also Koskotas v. Roche*, 740 F. Supp. 904, 916-17 (D. Mass. 1990). Pursuant to the rule of non-inquiry, "courts refrain from investigating the fairness of a requesting nation's justice system, and from inquiring into the procedures or treatment which await a surrendered fugitive in the requesting country." *Kin-Hong*, 110 F.3d at 110 (internal

8

quotations and citation omitted). "The rule of non-inquiry, like extradition procedures generally, is shaped by concerns about institutional competence and by notions of separation of powers." *Id.* "It is not that questions about what awaits the relator in the requesting country are irrelevant to extradition; it is that there is another branch of government, which has both final say and greater discretion in these proceedings, to whom these questions are more properly addressed." *Id.* at 111.

## IV.    The Indictment Does Not Violate the Rule of Specialty

Contrary to T.C.'s contention, the reference to Article 22 in the indictment does not violate the rule of specialty laid out in Article 16 of the Treaty. That section provides, as relevant here, that a "person *who has been extradited* in accordance with this present Treaty shall not be prosecuted, punished or detained for the enforcement of a sentence or subjected to any other restrictions on personal freedom . . . for any offense committed prior to surrender from the territory of the Requested Party other than that for which extradition was granted," except "[i]f there is an express consent of the Requested Party." Dkt. 70-1 at 22 (emphasis added). The plain text of Article 16 shows it applies only to those who have already been extradited, not those awaiting extradition such as T.C. Because T.C. has not yet been extradited, there can be no rule of specialty violation.

Additionally, as explained above, the reference to Article 22 is not a new charge but a potential penalty enhancement, and thus the rule of specialty is not implicated because the underlying Article 85(2) charge remains unchanged. Even if it were changed (it is not), the rule of specialty "does not require that a defendant be prosecuted only under the precise indictment that prompted his extradition" or "that the prosecution always be limited to specific offenses enumerated in the surrendering state's extradition order." *United States v. Saccoccia*, 58 F.3d 754, 767 (1st Cir. 1995) (citing *United States v. Andonian*, 29 F.3d 1432, 1435-36 (9th Cir. 1994), *cert. denied*, 513 U.S. 1128 (1995)). Rather, the rule of specialty "must be applied in a practical,

commonsense fashion." *Id*. Indeed, "the principle of specialty does not impose any limitation on the particulars of the charges lodged by the requesting nation, nor does it demand departure from the forum's existing rules of practice (such as rules of pleading, evidence, or procedure)." *Id.* (citing *United States v. Alvarez-Moreno*, 874 F.2d 1402, 1414 (11th Cir. 1989), *cert. denied*, 494 U.S. 1032 (1990)), and *Demjanjuk v. Petrovsky*, 776 F.2d 571, 583 (6th Cir. 1985), *cert. denied*, 475 U.S. 1016 (1986)). Rather, the Court must consider the totality of the circumstances and whether the charge in the indictment is "interconnected with (as opposed to independent from) the acts for which he was extradited." *Id.* (citing *Andonian*, 29 F.3d at 1435; *United States v. Cuevas*, 847 F.2d 1417, 1427-28 (9th Cir. 1988), *cert. denied*, 489 U.S. 1012 (1989); *United States v. Paroutian*, 299 F.3d 486, 490-91 (2d Cir. 1962)). Here, there can be no dispute that the indictment encompasses conduct interconnected with the acts for which the Court certified extraditability where the evidence is the same and the charge still concerns the reckless killing of one person and injury to others.

Courts routinely find that the charges identified in an indictment do not need to mirror exactly the charges in the extradition request. *E.g.*, *United States v. Levy*, 25 F.3d 146, 159 (2d Cir. 1994) (finding rule of specialty not violated where defendant, extradited to the United States on a narcotics conspiracy charge, was tried on additional drug trafficking charges because they were not actually separate offenses); *United States v. Rossi*, 545 F.2d 814, 815 (2d Cir. 1976) (no violation of the rule of specialty where superseding indictment involved same basic offenses as indictment on which extradition was granted), *cert denied*, 430 U.S. 907 (1977); *Fiocconi v. Attorney General of the United States*, 462 F.2d 475, 478, 480-82 (2d Cir.) (finding no specialty violation for defendants prosecuted "for subsequent offenses of the same character as the crime for which they were extradited), *cert denied*, 409 U.S. 1059 (1972). Likewise here, the indictment

10

of T.C. involves the same basic offense of the same character as the charge for which the Court certified extraditability.

Moreover, the United States, not T.C., is the relevant party to raise a specialty claim, if any, with the requesting party, Türkiye. Indeed, Article 16(1)(c) and (2) of the Treaty provides that the requested party—here, the United States—may consent to the prosecution of an extradited person for an offense committed prior to the surrender other than that for which extradition was granted. Dkt. 70-1 at 22; *see also Saccoccia*, 58 F.3d at 766-67 (stating that the rule of specialty "is grounded in international comity rather than in some right of the defendant" and "may be waived by the asylum state") (citing *United States v. Najohn*, 785 F.2d 1420, 1422 (9th Cir. 1986) (explaining that the rule of specialty is "a doctrine based on international comity" and that "the protection exists only to the extent that the surrendering country wishes")). Under 18 U.S.C. § 3186, the Secretary of State decides on extradition and surrender and memorializes that decision in a surrender warrant specifying the crimes or offenses for which extradition is granted. The Secretary of State decides whether and in what manner to approach a foreign state regarding possible violations of the rule of specialty, because the right to insist on its application belongs to the requested state, not the individual whose extradition is requested. *See* Dkt. 70-1 at 22.

## V.    Because T.C. Cannot Show He Is Likely to Succeed on the Merits of His Motion to Reopen and for Rehearing, His Motion for Stay Should Be Denied

To obtain a stay, T.C. must "(1) make a 'strong showing that [he is] likely to succeed on the merits' . . . ; (2) show that [he] 'will be irreparably injured absent a stay'; (3) show that 'issuance of the stay will [not] substantially injure the other parties interested in the proceeding'; and (4) show that the stay would serve 'the public interest.'" *New York v. Trump*, 133 F.4th 51, 65 (1st Cir. 2025) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). "The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is

11

likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002).

As detailed above, T.C. is unlikely to succeed on his motion to re-open and for rehearing because Türkiye is proceeding on the same Article 85(2) charge in the indictment as it did in the extradition request. The inclusion of a citation to Article 22(3) concerns his potential penalty, and the Court's review of T.C.'s potential penalty is limited to whether violation of Article 85(2) is punishable by more than a year in prison. Further, the Court already found the evidence was sufficient to establish probable cause that T.C.'s conduct was reckless. Because there is no new evidence, change in law, or other basis for the Court to reopen the extradition hearing and revisit this finding, T.C. cannot show he is likely to succeed on the merits of the motion on which he bases his stay request.

T.C.'s failure to show that he is likely to prevail on the merits of his motion to reopen and for reconsideration is fatal to his stay motion because "[a] stay is not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 433 (citation omitted). It is true that if a stay is denied, T.C. could be extradited, in which case his pending claims will be moot. But "[t]his is the harm facing every petitioner who lacks meritorious habeas corpus claims challenging an impending extradition," *Venckiene v. United States*, 929 F.3d 843, 864 (7th Cir. 2019), and the weakness of his claim means that he will not suffer irreparable injury if a stay is denied as further judicial review "could only delay but not prevent extradition." *Jimenez v. U.S. Dist. Court for S. Dist. of Fla.*, 84 S. Ct. 14, 19 (1963) (Goldberg, J., in chambers). Consistent with the foregoing, the Supreme Court, circuit courts, and myriad other courts routinely deny stays of extradition notwithstanding claims of irreparable injury. *See, e.g., Rana v. Engleman*, No. 25-1053, 2025 WL 719820 (9th Cir. Feb. 21, 2025); *Sridej v. Blinken*, No. 24A236 (Sept. 6,

2024) (Kagan, J.); *Yoo v. United States*, No. 22A384 (Nov. 3, 2022) (Sotomayor, J.); *Venckiene*, 929 F.3d 843; *Froude v. Milusnic*, No. 17A774 (Jan. 23, 2018) (Kennedy, J.); *Morales v. Elks*, No. 17A445 (Nov. 15, 2017) (Roberts, C.J.); *Ye Gon v. Dyer*, 137 S. Ct. 347 (2016); *Gutierrez v. United States*, 136 S. Ct. 998 (2016).

Moreover, a stay is not in the public interest. The Supreme Court has stated that "[t]he surrender of a fugitive, duly charged in the country from which he has fled with a nonpolitical offense and one generally recognized as criminal at the place of asylum, involves no impairment of any legitimate public or private interest." *Factor v. Laubenheimer*, 290 U.S. 276, 293-94 (1933). The United States' "[f]ailure to comply with foreign nations' proper extradition requests threatens to erode the effective force of these treaties" and the "confidence" that those nations place in "the United States [to] abide by its treaties." *Id*. The consequence: "the United States risks losing the ability to obtain the extraditions of people who commit crimes here and flee to other countries." *Venckiene*, 929 F.3d at 865.; *see also Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986) (explaining that "the public interest will be served by the United States complying with a valid extradition application" because "[s]uch proper compliance promotes relations between the two countries, and enhances efforts to establish an international rule of law and order").

Here, the United States has a strong interest in having extradition requests submitted by Türkiye (and other treaty partners) resolved promptly, both to comply with its treaty obligations and to further its reciprocal interest in having other nations cooperate swiftly with its own extradition requests and other law enforcement objectives. "At some point all litigation must end" and there is "no compelling reason for further delaying this one." *Jimenez*, 84 S. Ct. at 19.

13

## CONCLUSION

For the foregoing reasons, the Court should deny T.C.'s motions (1) to reopen the extradition hearing and reconsider the issuance of the certificate of extraditability and (2) to stay extradition.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:  */s/ Kristen A. Kearney*
KRISTEN A. KEARNEY
Assistant U.S. Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Kristen A. Kearney*
KRISTEN A. KEARNEY
Assistant U.S. Attorney

Dated: April 3, 2026

14